IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 10, 2004

**STATE OF TENNESSEE v. CORNELIUS RICHMOND**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-06743-46     Joseph B. Dailey, Judge**

_____

**No. W2003-00683-CCA-R3-CD  - Filed March 1, 2004**

_____

A Shelby County jury convicted the defendant, Cornelius Richmond, of one count of robbery and three counts of forgery. The trial court ordered the defendant to serve an effective sentence of thirty-three years as a career offender. On appeal, the defendant contends: (1) the trial court erred in denying his motion to suppress his statement to the police; (2) the evidence is insufficient to support his robbery conviction; and (3) the trial court erred in failing to instruct the jury on facilitation as a lesser-included offense. Upon review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Cornelius Richmond.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On November 9, 1999, the defendant and his accomplice, Nickie Kirby, snatched a purse from Shirley Christie, the seventy-eight-year-old victim, and used a credit card found inside the purse to purchase various items from Goldsmith's. Mrs. Christie testified that at approximately 1:00 p.m., while approaching her vehicle parked in a lot near Grady's Restaurant in Shelby County, Tennessee, a white vehicle pulled behind her vehicle. While the vehicle's engine was running, a man exited the vehicle, and a second man remained seated on the driver's side. Mrs. Christie testified the man who exited the vehicle then ran up to her and demanded her purse. When she refused, the man attempted to take her purse while she continued to resist. Mrs. Christie stated that as she was screaming, the man knocked her down, took her purse, and fled. Employees from a nearby business then came to her aid and called the police. Mrs. Christie testified that as a result of the fall, she suffered from a compressed vertebrae and had to wear a back brace for six months.

Mrs. Christie stated her purse contained various credit cards from Goldsmith's, BP, Dillard's, and Exxon, and some of these cards were in her husband's name. She further stated neither she nor her husband gave anyone permission to use the credit cards. Mrs. Christie testified she did not adequately view either of the two men during the incident and that she would be unable to identify them if she saw them again.

Emanueal Thomas testified that on November 9, while working as a loss-prevention manager at Goldsmith's at the Southland Mall, he observed two men purchasing a ring from the jewelry department. Thomas stated he then went to the camera room where he observed both of the men selecting various items from the young men's department without first looking at the prices. The two men then went to the shoe department where they both placed various merchandise on the counter. Thomas testified one of the men walked away from the counter while the other man paid for the merchandise with a Goldsmith's credit card.

Thomas testified he pulled up the transaction on his computer and obtained the account number of the credit card. He then attempted to contact the customer but was successful in his attempts only after the men left the store. Thomas stated he described the men to the customer, who stated that the men were unauthorized users and that the credit card had been stolen.

Thomas testified the two men reentered the store the next day, and he then called the police. Thomas stated that when the men were apprehended, one of the suspects had three receipts from Goldsmith's in his possession. Each receipt was dated November 9 and bore the account number of a Goldsmith's credit card issued to Fred Christie. Thomas stated the first receipt was for jewelry in the amount of $324.75; the second receipt was for merchandise in the amount of $229.48; and the third receipt was for shoes in the amount of $194.83. Thomas was unable to recognize the defendant in court as one of the perpetrators.

Officer Sam Blue of the Memphis Police Department testified that on November 10 between 2:00 and 3:00 p.m., he and his partner arrested the defendant and Nickie Kirby at Goldsmith's inside the Southland Mall. Officer Blue stated he found Kirby in possession of various receipts from Goldsmith's, an Exxon and a BP gas card issued to Fred Christie, and a Dillard's credit card issued to Mrs. Fred Christie.

Lieutenant Reginald Morgan testified he interviewed the defendant after he was arrested and that, upon waiving his rights, the defendant gave a statement admitting to participating in the robbery with "Nick" who was driving a white Jeep Cherokee. In his statement, which was read into evidence, the defendant explained:

> I was driving a black Buick following in [sic] the Jeep Cherokee. We pulled up in some apartments. I parked the vehicle. He came up in the Jeep Cherokee. I got into the Jeep Cherokee after he asked me to ride. We was riding, and [N]ick said, "Let's go and get some money." I said, "How is you going to get it?" He said, "What I do best, that is snatching a purse."

We were sitting on the lot in the Jeep Cherokee. I was on the passenger's side, and Nick was driving. Nick said, "Let's get her." And I said, "No, man." Then he pulled up, and we both got out, and he said, "Let's get her." We both ran over to her, and Nick said, "Drop the purse" and she did. I got the purse after she dropped it. We ran off and got back into the jeep. We drove back to the apartments and we got back into the black Buick and we drove off.

The defendant further informed the officers that although he did not use the credit cards found inside the purse, "Nick" used them at Goldsmith's in the Southland Mall to purchase a ring and various articles of clothing from which the defendant received a pair of jeans and a shirt.

The defendant offered no proof at trial.

The defendant was charged with one count of robbery by violence, one count of robbery by fear, and three counts of forgery under $500. The jury acquitted the defendant of robbery by violence and convicted him of the remaining charges. Following a sentencing hearing, the trial court sentenced the defendant as a career offender to fifteen years for the robbery conviction and six years for each forgery conviction to be served consecutively, for an effective sentence of thirty-three years.

## I. MOTION TO SUPPRESS

The defendant contends the trial court erred in denying his motion to suppress his statement to the police because he was not afforded a prompt judicial determination of probable cause after his warrantless arrest in violation of the Fourth Amendment.[1] We disagree.

## A. Suppression Hearing

During the suppression hearing, Officer Sam Blue testified he arrested the defendant and Nickie Kirby on November 10 between 2:00 and 3:00 p.m. at Goldsmith's. Officer Blue stated the security guard at the store advised him that two men had purchased various items using a stolen credit card on the previous day and that they were then at the store attempting to return the items. Officer Blue further stated that upon arriving at the store, he observed the defendant and another man standing at the counter attempting to return a "gold lion's-head" ring. The officer approached the two men and requested identification. The officer found credit cards issued to a person whose last name was Christie in the possession of one of the men. Officer Blue stated that upon further investigation, he discovered that a robbery had occurred involving Mrs. Christie. The officer arrested both men and transported them to the police station.

Lieutenant Reginald Morgan testified he interviewed the defendant on November 10, the same day on which the defendant was arrested. The officer further stated the defendant was arrested at approximately 2:40 p.m.; he arrived at the police station at approximately one hour later; and the

_____

[1]The defendant does not argue that his detention also violates Rule 5(a) of the Tennessee Rules of Criminal Procedure. Regardless, we discern no violation under the facts and circumstances of this case.

interview began at approximately 7:00 p.m., about four hours after the defendant was arrested. Lieutenant Morgan testified the investigation into the robbery was "on-going," and the defendant was brought to the robbery bureau where he was interviewed in order to continue with the investigation. Lieutenant Morgan stated that between the time the defendant was brought to the robbery bureau and the time of the interview, officers continued to gather information regarding the robbery.

Lieutenant Morgan testified he advised the defendant of his rights, and the defendant then read and signed an "advice of rights form." Lieutenant Morgan stated he presented the defendant with the waiver of rights form at 7:00 p.m. and that the defendant signed the form at 7:03 p.m. Lieutenant Morgan testified the defendant gave three separate statements that night. The first statement pertained to the robbery involving Shirley Christie, while the last two statements involved two separate robberies. According to the officer, the first statement was taken at 8:53 p.m., and the defendant signed the statement at 9:45 p.m.

At the conclusion of the proof, the parties stipulated that according to the affidavit of complaint, the probable cause determination was made on November 12 at 9:27 a.m. Thus, it was agreed that the defendant was formally charged within forty-eight hours of his arrest.

## B. Trial Court's Findings

In denying the defendant's motion to suppress, the trial court found law enforcement officials did not hold the defendant solely to obtain a statement from him, which the officers could then use to establish probable cause to present the defendant to a magistrate. The court noted the officers possessed evidence independent of the defendant's statement, including the stolen credit cards themselves. The trial court further noted the officers advised the defendant of his rights prior to taking his statement, and the probable cause determination was made within thirty-six hours of his arrest. The court found the officers, thus, satisfied the requirements of the Fourth Amendment to the United States Constitution.

## C. Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, the application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). Absent a showing by the defendant that the evidence preponderates against the judgment of the trial court, this court must defer to the ruling of the trial court. State v. Cribbs, 967 S.W.2d 773, 795 (Tenn.1998).

-4-

**D. Analysis**

The Fourth Amendment requires a prompt judicial determination of probable cause after a warrantless arrest. Gerstein v. Pugh, 420 U.S. 103, 125, 95 S. Ct. 854, 869, 43 L. Ed. 2d 54 (1975); State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000). Judicial determinations of probable cause are generally to be made within forty-eight hours of the arrest. County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670, 114 L. Ed. 2d 49 (1991). However, the probable cause determination does not pass constitutional muster simply because it occurs within forty-eight hours. *Id.* Rather, a probable cause determination may not pass constitutional muster if it was unreasonably delayed for the purpose of gathering evidence to justify an arrest, the delay was simply for delay's sake, or the delay was motivated by ill will against the arrested individual. *Id*; *see* State v. Huddleston, 924 S.W.2d 666, 671-72 (Tenn. 1996).

The defendant does not contend a probable cause determination occurred outside the forty-eight-hour time period. Rather, the defendant submits that the police officers delayed the determination in order to secure an incriminating statement from him. The evidence presented at the suppression hearing established that the defendant was arrested between 2:00 and 3:00 p.m.; he executed a waiver of rights form at approximately 7:00 p.m.; and he gave a statement relating to the present case at 8:53 p.m. There was no reason for the officer to further justify the arrest because the arresting officer clearly had probable cause to arrest the defendant when he and his co-perpetrator were taken into custody at Goldsmith's. The magistrate made a determination of probable cause approximately thirty-six hours after the defendant's arrest. As the trial court noted, the police officers were conducting an on-going investigation and possessed evidence linking the defendant to the offense independent of the defendant's statement. We conclude the defendant was taken before a magistrate within forty-eight hours, and the determination of probable cause was not unreasonably delayed. Therefore, the trial court properly denied the defendant's motion to suppress.

## II. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence presented at trial is insufficient to support his conviction for robbery by putting the victim in fear.[2] We disagree.

**A. Standard of Review**

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State

---

[2]The defendant does not argue that the evidence is insufficient to support the forgery convictions. Regardless, we conclude the evidence is sufficient to support these convictions.

v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

## B. Analysis

The defendant was convicted of robbery based upon criminal responsibility for the conduct of another. As applicable to the present case, one is criminally responsible for an offense committed by the conduct of another if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). Robbery, as applicable to the case at bar, is "the intentional or knowing theft of property from the person of another by . . . putting the person in fear." *Id.* § 39-13-401(a). Theft of property occurs when a person who intends to deprive the owner of property "knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103. Fear as an element of robbery involves fear of "present personal peril from violence offered or impending" and must be a fear of "bodily danger or impending peril to the person which intimidates or promotes submission to the theft of the property." State v. Bowles, 52 S.W.3d 69, 80 (Tenn. 2001) (citations omitted). Furthermore, the fear must precede or occur contemporaneously with the taking of property from the person. State v. Owens, 20 S.W.3d 634, 641 (Tenn. 2000).

In challenging his robbery conviction, the defendant maintains the evidence is insufficient to establish identity because the victim failed to identify him at trial as the perpetrator. The defendant further submits the evidence is insufficient to establish that the victim was placed in fear. We disagree.

The seventy-eight-year-old victim testified that while she was standing in a parking lot, two men arrived in a white vehicle. The victim stated the passenger exited the vehicle, approached her, and demanded her purse. When the victim refused, the passenger attempted to take the purse from her; the victim began screaming; and the passenger pushed the victim onto the ground, took her purse, and fled.

Emanueal Thomas testified that he observed two men select various items from a Goldsmith's store, and one of the men paid for the merchandise using a Goldsmith's credit card issued to Fred Christie. Thomas then learned that the credit card had been stolen. When the two men returned the next day, Thomas called the police. Officer Blue testified that upon arresting the defendant and Kirby, he discovered credit cards issued to the victim and her husband in Kirby's possession.

Furthermore, the defendant gave a statement to the police in which he admitted to his participation in the robbery. The defendant informed the police that he and Kirby arrived in a Jeep Cherokee and that he grabbed the victim's purse after Kirby ordered her to "[d]rop" it. The defendant stated Kirby used the credit cards found inside the purse to purchase merchandise from Goldsmith's from which the defendant received a pair of jeans and a shirt. The defendant's identity as a perpetrator of the robbery was amply established by the evidence.

We further reject the defendant's contention that the state failed to establish that the victim was in fear. The victim's testimony established she was seventy-eight-years old, was knocked to the ground, and was "screaming." The evidence was sufficient to support the verdict.

### III. LESSER-INCLUDED OFFENSES

The defendant made an oral and written request that facilitation be charged as a lesser-included offense, and the trial court denied his request. On appeal, the defendant contends the trial court erred in failing to instruct the jury on facilitation as a lesser-included offense of robbery and forgery. We disagree.

In applying the lesser-included offense doctrine, three questions must be addressed: "'(1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless.'" State v. Richmond, 90 S.W.3d 648, 659 (Tenn. 2002) (quoting State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002)). The standard for an appellate court's review of the trial court's charge to the jury regarding lesser-included offenses is *de novo* with no presumption of correctness. State v. Moore, 77 S.W.3d 132, 134 (Tenn. 2002).

Facilitation of robbery and facilitation of forgery are lesser-included offenses of robbery and forgery, respectively. *See* State v. Burns, 6 S.W.3d 453, 467 (Tenn. 1999). If an offense is found to be a lesser-included offense, the court must next ascertain whether the evidence justifies a jury instruction on the lesser-included offense. State v. Bowles, 52 S.W.3d 69, 75 (Tenn. 2001). To do so, the court must first determine whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense. Burns, 6 S.W.3d at 469. The court must view the evidence liberally in a light most favorable to the existence of the lesser-included offense without judging its credibility. State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001); Burns, 6 S.W.3d at 469. Finally, the court must determine if the evidence is "legally sufficient" to support a conviction for the lesser-included offense. Burns, 6 S.W.3d at 469.

The evidence, not the theories of the parties, determines whether an instruction on a lesser-included offense should be given. Allen, 69 S.W.3d at 188. Furthermore, the decision to convict on a lesser-included offense should not be taken from the jury simply because the element distinguishing the greater offense from the lesser offense is "uncontroverted." *Id*. at 189. If the evidence justifies an instruction, the failure to charge the offense is error even though the evidence was also sufficient to support the greater offense. Burns, 6 S.W.3d at 472.

Harmless error relating to the failure to charge lesser-included offenses must be shown "beyond a reasonable doubt." Ely, 48 S.W.3d at 727. The proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." Allen, 69 S.W.3d at 191. In making the harmless error determination, this court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Id*.

In sum, when a reviewing court determines whether a lesser-included offense ought to be charged, the evidence clearly controls. If there is evidence sufficient to support a conviction for a lesser-included offense, we hold that a trial court must charge that offense. The determinative test being whether there is evidence sufficient such that a jury *could* convict on that lesser-included offense. If a jury could convict, no matter how improbable, it is error not to charge that lesser-included offense. However, in deciding whether it was harmless beyond a reasonable doubt not to charge a lesser-included offense, the reviewing court must determine whether a reasonable jury *would* have convicted the defendant of the lesser-included offense instead of the charged offense. In other words, the reviewing court must determine whether it appears beyond a reasonable doubt that the trial court's failure to instruct on the lesser-included offense did not affect the outcome of the trial. Allen, 69 S.W.3d at 191.

Richmond, 90 S.W.3d at 662 (emphasis in original).

## A. Robbery

Our supreme court has determined that facilitation is a lesser-included offense when a defendant is charged with criminal responsibility for the conduct of another. Burns, 6 S.W.3d at 470. Thus, we must next determine whether any evidence exists that reasonable minds could accept as to the application of a lesser-included offense and whether the evidence, if viewed in this light, is legally sufficient to support a conviction for the lesser-included offense. *Id.* at 467-69. In order for reasonable minds to find the defendant guilty of facilitation of robbery, the jury would be required to conclude in this case that the defendant, although not acting with the intent to promote robbery nor benefit in the proceeds, furnished substantial assistance to the principal actor "knowing that [the principal] inten[ded] to commit [robbery]." *See* Tenn. Code Ann. § 39-11-403(a).

In Allen, our supreme court held that the trial court erred in failing to charge the jury with facilitation of robbery as a lesser-included offense of aggravated robbery. 69 S.W.3d at 188-89. The court noted that instructions on both criminal responsibility and facilitation may be supported by the same evidence. *Id.* at 188-89 n.2. Furthermore, the court concluded reasonable minds could accept the offense of facilitation of robbery and that the evidence was legally sufficient to support a conviction for facilitation of robbery. *Id.* at 189. In reaching its conclusion, the court noted that the defendant stood silently in the doorway as his accomplice committed the robbery; he did not display a weapon and did not take any property from the victim; and no evidence was presented establishing that the defendant received any proceeds from the robbery. *Id.* at 188.

However, unlike Allen, the evidence in the case at bar, when viewed in a light most favorable to the existence of the lesser-included offense, established that the defendant directly participated in the commission of the robbery. The defendant admitted to the police that he was the passenger inside the vehicle where he and Kirby discussed the robbery prior to its commission. According to the defendant's statement, he picked up the purse after Kirby ordered the victim to "[d]rop" it. Although the defendant denied using the credit cards, he informed the police that Kirby used the credit cards found inside the purse to purchase merchandise from Goldsmith's from which he

received a pair of jeans and a shirt. Based upon this evidence, no reasonable juror could conclude that the defendant did not intend to promote the robbery or benefit in the proceeds. We further conclude that even if the trial court erred in failing to charge facilitation of robbery as a lesser-included offense, it was harmless beyond a reasonable doubt. *See* Richmond, 90 S.W.3d at 662.

## B. Forgery

The defendant was convicted of three counts of forgery based upon criminal responsibility. A person commits forgery who "forges a writing with intent to defraud or harm another." Tenn. Code Ann. § 39-14-114(a). "Forge," as applicable to the case at bar, means to "[a]lter, make, complete, execute or authenticate any writing so that it purports to . . . [b]e the act of another who did not authorize the act." *Id.* at (b)(1)(A)(i). Under the Burns test, facilitation is a lesser-included offense of forgery based upon a theory of criminal responsibility. *See* Burns, 6 S.W.3d at 470.

When viewed in a light most favorable to the existence of the lesser-included offense, the evidence presented at trial unquestionably establishes that the defendant intended to promote the forgery offenses and benefit in the proceeds. According to the undisputed proof, the defendant and Kirby went to Goldsmith's with the stolen credit cards on the same day in which the victim was robbed. Emanueal Thomas observed both men choose various items without first looking at the prices and place the items on the counter. The defendant told the police that although he did not personally use the credit cards, he received a pair of jeans and a shirt as a result of the purchases. A reasonable juror could only conclude that the defendant intended to benefit from the forgeries. Furthermore, if the trial court did err in refusing to charge facilitation, it was harmless beyond a reasonable doubt. *See* Richmond, 90 S.W.3d at 662. The defendant is not entitled to relief on the failure to charge facilitation as a lesser-included offense.

Accordingly, we affirm the judgments of the trial court.

_____
JOE G. RILEY, JUDGE

-9-