IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 15, 2004

## STATE OF TENNESSEE v. TIMOTHY D. PRINCE

**Appeal from the Circuit Court for Williamson County**
**No. I-8385   Russ Heldman, Judge**

_____

**No. M2004-01262-CCA-R3-CD - Filed May 3, 2005**

_____

The appellant, Timothy D. Prince, was indicted by the Williamson County Grand Jury for one count of possession of marijuana. Prior to trial, the appellant filed a motion to suppress the evidence. The trial court denied the motion and found the appellant guilty of possession of marijuana after a bench trial. As a result, the trial court sentenced the appellant to serve eleven (11) months and twenty-nine (29) days in the county jail. After the denial of a motion for new trial and an amended motion for new trial, the appellant filed a timely notice of appeal. On appeal, the appellant challenges: (1) the trial court's denial of the motion to suppress; (2) the sufficiency of the evidence despite the possibility of missing evidence; and (3) the sentence imposed by the trial court. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Judson Wheeler Phillips, Nashville, Tennessee, for the appellant, Timothy D. Prince.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; Ron Davis, District Attorney General, and Mary Katherine White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

On February 4, 2003, Officer Colin Consiglio of the Brentwood Police Department observed the appellant speeding in the southbound HOV lane of I-65 near the Concord Road exit. Officer Consiglio confirmed by radar the appellant's speed at seventy-seven (77) miles per hour and activated his blue lights to indicate to the appellant that he must pull over. As Officer Consiglio approached the vehicle on the passenger side, he smelled the odor of burnt marijuana. Officer Consiglio obtained the appellant's driver's license and directed him to step out of the vehicle. At that time, Officer Consiglio commented to the appellant that he smelled marijuana. The appellant responded by saying, "I've got eleven seven," producing a plastic bag of marijuana from his right front pocket.[1] Officer Consiglio then gave the appellant <u>Miranda</u> warnings, after which the appellant told him that he bought the marijuana in Arrington the day before for twenty dollars ($20).

As Officer Consiglio conducted a pat-down search of the appellant, the passenger of the vehicle fled on foot. The appellant was handcuffed temporarily until the passenger was apprehended. Officer Consiglio issued a citation to the appellant for misdemeanor possession of marijuana.

The appellant was indicted in August of 2003 by the Williamson County Grand Jury for one count of possession of marijuana, a Class A misdemeanor. Prior to trial, the appellant filed a motion to suppress the evidence, arguing that any evidence seized as a result of the warrantless arrest should be suppressed. After a hearing, the trial court determined that there had been no "constitutional violation" and denied the motion to suppress.

Subsequently, the appellant waived his right to a jury trial. At a bench trial on April 6, 2004, the trial court heard the testimony of Officer Consiglio. He testified to the events surrounding the appellant's arrest and stated that although his patrol car was equipped with a video recorder, no video of the arrest was available at trial. There was also evidence that the substance produced by the appellant was tested by the TBI crime lab and determined to be 11.1 grams of marijuana. The trial court found the appellant guilty and sentenced him to serve eleven (11) months and twenty-nine (29) days at seventy-five percent (75%) service in the county jail.

On appeal, the appellant challenges: (1) the trial court's denial of the motion to suppress; (2) the sufficiency of the evidence despite the possibility of missing evidence; and (3) the sentence imposed by the trial court.

---

[1] At the sentencing hearing, the appellant explained that the term "eleven-seven" referred to the weight of the marijuana.

Motion to Suppress

The appellant argues that the trial court erred by overruling his motion to suppress the evidence. Specifically, he complains that Officer Consiglio should have given <u>Miranda</u> warnings before the appellant produced the marijuana. The State argues that because the appellant voluntarily gave the marijuana to Officer Consiglio and his actions were not in response to custodial interrogation, the <u>Miranda</u> warnings were not required and the trial court was correct in denying the motion to suppress.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in <u>State v. Odom</u>, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." <u>Id.</u> at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" <u>State v. Carter</u>, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting <u>State v. Keith</u>, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews <u>de</u> <u>novo</u> the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. <u>See</u> <u>State v. Crutcher</u>, 989 S.W.2d 295, 299 (Tenn. 1999).

The Fifth Amendment to the United States Constitution guarantees an individual a right against self-incrimination, and in order to protect this right, the United States Supreme Court has held that police officers interrogating an individual in custody must first follow certain procedural safeguards advising the individual of his or her rights under the Fifth Amendment. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). In order to trigger this requirement, an individual must be both in custody and be interrogated. <u>See</u> <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980). Custody has been defined by the Court as a situation in which a suspect has been placed under formal arrest or has been "otherwise deprived of his [or her] freedom of action in any significant way." <u>Miranda</u>, 384 U.S. at 444. Interrogation may be both express questions or their functional equivalent, i.e. "any words or actions on the part of the police (other than those attendant to arrest and custody) that the police should know are reasonably likely to elicit incriminating information" or any "practice that the police should know is likely to evoke an incriminating response from a suspect." <u>Innis</u>, 446 U.S. at 301.

Before initiating a custodial interrogation, the police must advise individuals that they have the right to remain silent; that any statement that they make may be used against them; that they have the right to the presence of an attorney during questioning; and that if they cannot afford to hire an attorney, one will be appointed to represent them. <u>See</u> <u>Miranda</u>, 384 U.S. at 444. Any statements made during custodial interrogation without the benefit of these warnings are inadmissible in court. <u>See</u> <u>Dickerson v. United States</u>, 530 U.S. 428 (2000). When reviewing whether the trial court properly granted the appellant's motion to suppress in the case herein, we must first determine whether the appellant was subjected to custodial interrogation before being advised of his rights under <u>Miranda</u>.

This Court has recognized that "[t]here is a difference between police-initiated custodial interrogation and communications, exchanges, or conversations initiated by the accused himself," and that "[a]t the very least, the police must have asked a question that was '[probing, accusatory, or likely to elicit an incriminating response' before a court may conclude that there was interrogation." State v. Land, 34 S.W.3d 516, 524 (Tenn. Crim. App. 2000). Citing Innis, this Court acknowledged that there is no constitutional protection from a statement volunteered by the accused:

> Since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response. Additionally, where a defendant makes a statement without being questioned or pressured by a government agent, the statement is admissible, if the statement was freely and voluntarily made by the defendant.

Land, 34 S.W.3d at 524-25 (citations omitted).

In the case herein, Officer Consiglio testified that he simply commented to the appellant that he smelled burnt marijuana. He did not ask the appellant a question and testified that he did not have "any expectation" about a response from the appellant. After making the comment, the appellant spontaneously stated, "I've got eleven-seven," and produced a plastic bag of marijuana from his right front pocket. Nothing about the situation herein rose to the level of custodial interrogation. Officer Consiglio did not ask the appellant any direct questions and did not apply any pressure to the appellant in order to elicit information. Moreover, even if Officer Consiglio's actions could be construed as questioning, this type of roadside questioning of an individual detained in a routine traffic stop has been held by the United States Supreme Court to be constitutionally permissible despite the absence of Miranda warnings. See Berkemeyer v. McCarty, 468 U. S. 420, 438, 104 S.Ct. 3138, 3149, 82 L. Ed. Ed 317 (1984).

The evidence does not preponderate against the decision of the trial court to deny the motion to suppress. This issue is without merit.

### Sufficiency of the Evidence Despite Missing Videotape of Arrest

The appellant next complains that the trial court erred in finding him guilty because the State did not introduce a videotape of the appellant's arrest. Specifically, the appellant argues that without the videotape of the incident "there is no corroboration of the criminal offense." Citing State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), the appellant argues that the loss of the evidence deprived him of his fundamental right to a fair trial. The State contends that the "record supports the trial court's finding that, even if the videotape ever existed, there was no evidence of negligence or bad faith when the State was unable to present it for trial." Further, the State argues that the videotape was unnecessary because the proof against the appellant was overwhelming.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides every defendant the right to a fair trial.[2] To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Further, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. United States v. Agurs, 427 U.S. 97, 110-11 (1976).

In the case of State v. Ferguson, 2 S.W.3d 912, 916 (Tenn. 1999), our state supreme court adopted a test for courts to use in determining whether the loss or destruction of evidence deprived a defendant of a fair trial. The initial analytical step in this test for determining whether the police had any duty to preserve evidence was described as follows:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

Id. at 917. The Court explained that if the proof demonstrates the existence of a duty to preserve the evidence and demonstrates that the State failed in that duty, "the analysis moves to considerations of several factors which guide the decision regarding the consequences of the breach." Id. Accordingly, those factors include: "(1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction." Id. at 917. "If, after considering all the factors, the trial judge concludes that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges." Id. However, dismissal is but one of the trial judge's options. Id.

In this case, unlike Ferguson, it is unclear that the evidence that the appellant now argues was lost or destroyed ever even existed. Officer Consiglio testified that his patrol vehicle was equipped with a video recording device and that, as far as he knew, the equipment was functioning that day. However, he did not know if a videotape of the incident was made. Officer Consiglio testified that if a recording existed, it would have been destroyed within sixty (60) to ninety (90) days if not subpoenaed, pursuant to the standard practice of the Brentwood Police Department. The trial court determined that it could not be shown whether or not the videotape existed and, therefore, whether the tape was actually lost or destroyed by the State. We agree. After a review of the record, we have concluded that there is no substantial evidence showing that the videotape ever existed.

---

[2] "As a general rule, . . . a trial lacks fundamental fairness where there are errors which call into question the reliability of the outcome." State v. Ferguson, 2 S.W.3d at 912, 914 n.3 (citing Lofton v. State, 898 S.W.2d 246, 248 (Tenn. Crim. App. 1994); Watkins v. State, 393 S.W.2d 141, 144 (Tenn. 1965); Betts v. Brady, 316 U.S. 455, 462 (1942)).

Nevertheless, we also conclude that even if such a videotape existed, the appellant has failed to demonstrate that his right to a fair trial was affected by the loss and/or destruction of the evidence. See Ferguson, 2 S.W.3d at 917-18; see also State v. George R. Croft, No. W2001-00134-CCA-R3-CD, 2002 WL 31625047,at *6-7 (Tenn. Crim. App, at Jackson, Nov. 20, 2002), perm. app. denied (Tenn. 2003). There is no proof in the record that the appellant requested any videotape of the incident as part of the discovery process. Further, there is no proof that the videotape was anything other than "allegedly" exculpatory. Assuming that the police had a duty to preserve the videotape, no evidence was presented that the police acted in a grossly negligent manner. See id. Furthermore, we determine that there was an abundance of evidence that the appellant possessed marijuana. See id. Accordingly, we believe that this issue is without merit.

Sentencing

On appeal, the appellant argues that the trial court erred in ordering him to serve eleven (11) months and twenty-nine (29) days in incarceration and denying a suspended sentence. The State counters that the record "amply supports the trial court's decision."

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. See State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or

continuous confinement. Tenn. Code Ann. § 40-35-302(e). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d).

In the case herein, the trial court held a sentencing hearing immediately following trial. The State presented evidence of the appellant's prior convictions for casual exchange of cocaine and revocation of probation. At the hearing, the appellant testified that he would be starting a new job "tomorrow" and that he had not worked for several years, other than babysitting for his two of his three children while their mother, his girlfriend, worked. The appellant did not graduate from high school and never completed his GED. In response to a question regarding his residence, the appellant testified that he "stay[s] anywhere with my friends, or whatever." The appellant also admitted that he continued to use cocaine and marijuana during the time that his case was pending. In fact, he testified that he smoked marijuana two weeks before trial and that he had used cocaine within the week preceding the trial.

In sentencing the appellant to serve seventy-five percent (75%) of the eleven (11) month and twenty-nine (29) day sentence in incarceration, the trial court commented:

> I've considered all the sentencing considerations in this case; lengthy criminal conduct of this defendant, his poor record relative to prior probation, all the sentencing consideration[s].
> This is a situation where, as the proof has developed, [the appellant] has a lengthy history of criminal conduct; he's violating the law even while this case is pending; rehabilitation is very unlikely; there is a deterrence need in this case, and there is also - the Court finds it would depreciate the seriousness of the offense when looked at in the light of entire lifestyle and his prior records if the Court were to probate this gentleman.

After reviewing the evidence, we cannot conclude that the trial court exceeded the "wide latitude of flexibility" afforded him in misdemeanor sentencing and that ordering the appellant to serve seventy-five percent (75%) of the eleven (11) month and twenty-nine (29) day sentence in incarceration is consistent with the principles of the sentencing act. This issue is without merit.

<u>Conclusion</u>

For the foregoing reasons, the decision of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE