IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
(HEARD AT MEMPHIS)

# STATE OF TENNESSEE v. DON EDWARD CARTER

**Appeal from the Circuit Court for McNairy County**
**No. 917    Jon Kerry Blackwood, Judge**

---

**No. W1997-00248-SC-R11-CD - Decided April 17, 2000**
**FOR PUBLICATION**

---

This appeal arises from the incarceration of an individual for over 72 hours without his having been brought before a magistrate and without probable cause having been judicially determined. Don Edward Carter, the defendant, was arrested without a warrant and held for more than 72 hours. At no time during this period was he taken before a magistrate. He confessed while in custody. Following his indictment upon two counts of first degree murder (premeditated), Carter moved to suppress the confession on constitutional grounds and on the ground that Tenn. R. Crim. P. 5(a) had been violated. The trial court refused to suppress the confession, and it was admitted into evidence. The jury convicted Carter of both counts, and he was sentenced to concurrent terms of life imprisonment. On appeal, the Court of Criminal Appeals affirmed the trial court's ruling admitting the confession into evidence, the convictions, and the sentences. The issue before this Court is the admissibility of Carter's confession. Although we conclude that Carter's rights under the Fourth Amendment to the United States Constitution and Tenn. R. Crim. P. 5(a) were violated, we have determined that his confession was properly admitted into evidence. Accordingly, the judgment of the trial court and the Court of Criminal Appeals is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission from Appellate Court to Supreme Court; Judgment of the Court of Criminal Appeals Affirmed**

BIRCH, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, HOLDER, AND BARKER, JJ., joined.

C. Michael Robbins, Memphis, Tennessee, Gary F. Antrican, District Public Defender, Somerville, Tennessee, and Jeanie Kaess, Assistant Public Defender, Somerville, Tennessee, for the appellant, Don Edward Carter.

Michael E. Moore, Solicitor General, Marvin E. Clements, Jr., Assistant Attorney General, and Elizabeth T. Rice, District Attorney General, for the appellee, State of Tennessee.

## OPINION

I

Don Edward Carter, the defendant, was arrested without a warrant and held for more than 72 hours. At no time during this period was he taken before a magistrate. He confessed while in custody. Thus, the issue we decide today is the admissibility of his confession obtained under those circumstances.[1] Although we have concluded that Carter's rights under the Fourth Amendment to the United States Constitution and Tenn. R. Crim. P. 5(a) were violated, we have, for the reasons stated below, determined that his confession was properly admitted into evidence. Accordingly, the judgment of the trial court and the Court of Criminal Appeals is affirmed.

Because Carter does not challenge the sufficiency of the convicting evidence, we will recite only the facts developed at the suppression hearing we deem necessary in the resolution of the issue before us.

II

Carter was incarcerated without a warrant[2] on Sunday, March 24, 1996, at approximately 2:45 p.m. The next day, warrants charging him with first degree murder were issued.[3] On Wednesday, March 27, 1996, while still incarcerated, Carter confessed.

Following his indictment upon two counts of first degree murder (premeditated), Carter moved to suppress the confession on constitutional grounds and on the ground that Tenn. R. Crim. P. 5(a) had been violated. The trial court refused to suppress the confession, and it was admitted into evidence during the trial of the cause. The jury convicted Carter of both counts, and he was sentenced to concurrent terms of life imprisonment. On direct appeal, the Court of Criminal Appeals affirmed the trial court's ruling admitting the confession into evidence, the convictions, and the sentences.

Carter chiefly contends that he was held in custody for more than 72 hours without an appropriate determination of probable cause. His insistence, therefore, is that his Fourth Amendment rights were violated by the extended incarceration without a judicial determination of probable cause and that the extended incarceration produced the confession. He urges that the confession, obtained under these circumstances, be suppressed from evidence.

---

[1]Oral argument was heard in this case on November 17, 1999, in Memphis, Shelby County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[2]Carter concedes that this arrest, albeit without a warrant, was based on the existence of probable cause.

[3]Carter was charged with killing Audie Carter and Nellie Carter.

III

When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party in the trial court is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998) (citing Odom, 928 S.W.2d at 23). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. Id. (citation omitted). "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

IV

A

The Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to the extended detention of an individual after a warrantless arrest. Gerstein v. Pugh, 420 U.S. 103, 114, 125, 95 S. Ct. 854, 863, 869, 43 L. Ed. 2d 54, 65, 72 (1975). Absent a bona fide emergency or extraordinary circumstance, a judicial determination of probable cause is "prompt" if it occurs within 48 hours. Riverside v. McLaughlin, 500 U.S. 44, 56-7, 111 S. Ct. 1661, 1670, 114 L. Ed. 2d 49, 63 (1991). In making a judicial determination of probable cause, a full, adversarial proceeding is unnecessary. Gerstein, 420 U.S. at 118-22, 95 S. Ct. at 865-67, 43 L. Ed. 2d at 68-70. This is so because the standard for probable cause for prolonged detention is the same as the standard for determining probable cause for arrest--a standard "traditionally decided . . . by a magistrate in a nonadversary proceeding on hearsay and written testimony. . . ." Gerstein, 420 U.S. at 120, 95 S. Ct. at 866, 43 L. Ed. 2d at 69.

The United States Supreme Court has determined that the issuance of a valid arrest warrant satisfies the requirement that there must be a judicial determination of probable cause for extended detention. Baker v. McCollan, 443 U.S. 137, 143, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d. 433, 441 (1979). As the United States Supreme Court reasoned in Baker:

> [s]ince an adversary hearing is not required, and since the probable-cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial.

443 U.S. at 143, 99 S. Ct. at 2694, 61 L. Ed. 2d. at 441.[4]

In this case, arrest warrants were issued approximately 24 hours after Carter had been taken into custody. As noted, a valid warrant satisfies the requirement of a judicial determination of probable cause. Here, however, the State concedes that the affidavit portion of the warrants did not establish probable cause.[5] Thus, Carter's detention for over 48 hours without a valid probable cause determination was in violation of the Fourth Amendment.

We must now determine whether, under the circumstances, Carter's confession should have been suppressed. In <u>Huddleston v. State</u>, this Court determined that when a person confesses after having been detained for more than 48 hours following an arrest without a warrant and without a judicial determination of probable cause, the confession should be excluded unless the prosecution establishes that the confession "'was sufficiently an act of free will to purge the primary taint of the unlawful invasion.'" 924 S.W.2d 666 (Tenn. 1996) (quoting <u>Brown v. Illinois</u>, 422 U.S. 590, 599, 95 S. Ct. 2254, 2261, 45 L. Ed. 2d 416, 424 (1975). Four factors guide the issue of admissibility: "(1) the presence or absence of Miranda warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and finally, of particular significance, (4) the purpose and flagrancy of the official misconduct." <u>Huddleston</u>, 924 S.W.2d at 674-75 (citing <u>Brown</u>, 422 U.S. at 603-04, 95 S. Ct. at 2261-62, 45 L. Ed. 2d at 427). The burden is on the State to prove by a preponderance of the evidence the admissibility of a confession obtained under the circumstances here presented. <u>Id.</u> at 675.

---

[4]In <u>Gerstein</u>, the United States Supreme Court noted that:

> [t]he use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt.

420 U.S. at 121, 95 S. Ct. at 867, 43 L. Ed. 2d at 69.

[5]The affidavits to the arrest warrants read, "Don Carter AKA 'PeeWee' did kill Nellie Carter. This was a premeditated and intentional act and a violation of TCA 39 13 202" and "Don Carter AKA 'PeeWee' did kill Audie Carter. This was a premeditated and intentional act in violation of TCA 39 13 202." The State concedes in its brief that the "affidavit[s] admittedly on . . . [their] face . . . [do] not establish probable cause. . . ." Given the State's concession, there is no need to further examine the sufficiency of the warrants.

-4-

Here, Carter was given <u>Miranda</u> warnings when he was arrested. He was also informed of his <u>Miranda</u> rights prior to his confession. This factor, though not conclusive,[6] weighs in favor of admission.

Next, we consider the temporal proximity of the arrest to Carter's confession. This inquiry focuses on the point at which the statement was given relative to the detention. <u>Id.</u> If a confession is made during a period of lawful detention, the confession is not a product of any illegality and is not suppressed. <u>Id.</u> However, "[o]nce the detention becomes unlawful, the pressure to confess likely increases with each moment of continuing illegal detention." <u>Id.</u> Here, Carter confessed after 72 hours of detention without a valid judicial determination of probable cause. This factor, then, weighs in favor of suppression.

Whether the presence of intervening circumstances purged the taint of Carter's illegal detention is the next consideration. An intervening circumstance, sufficient to purge the taint of an illegal detention, may involve the detainee's "consultation with an attorney, relative, friend, or priest prior to the time a statement is given." <u>Id.</u> Here, Carter met privately at the jail with his mother and other relatives on more than one occasion. These visits occurred outside established visiting hours. Moreover, Carter was given the opportunity to make telephone calls that were unrestricted as to the person called or number of calls made. He used this opportunity to speak with his brother at least twice.[7] In our view, Carter's visits and telephone calls constitute intervening circumstances

---

[6]<u>Huddleston</u>, 924 S.W.2d at 675 ("Although that factor is not determinative, it indicates that the defendant was aware of his Fifth Amendment rights against self-incrimination which is a threshold factor weighing, to some extent, in favor of attenuation.").

[7]There is conflicting testimony over the number of times Carter met with his mother and with whom he additionally met. Paul Ervin, the Sheriff for McNairy County, testified that Carter met with his mother and other relatives on more than one occasion. Ervin later testified that Carter met with his mother, other relatives, and friends. On the other hand, Carter testified that he met with his mother more than once, but he was uncertain if he had met with anyone else. There is also conflicting testimony concerning Carter's ability to successfully make telephone calls. Carter testified that when he tried to call Rhonda Carter, his cousin, or Robert Stacey, a family friend, he discovered their telephones were "blocked." Rhonda Carter testified that she did not authorize a block to be put on her telephone. Stacey also testified that he had not authorized a telephone block. Ervin testified, on the other hand, that Rhonda Carter did not want to talk to Don Carter, and he thus informed her that her telephone could be blocked. Therefore, the telephone was blocked at her request. Ervin also testified that he did not remember discussing a telephone block with Stacey, but if one was put on his telephone it was at Stacey's request. Regardless, Carter testified that he was able to call his brother and spoke to him on at least two occasions. Despite this conflicting testimony, we believe that Carter's visits with at least his mother and his calls to his brother are sufficient intervening circumstances to purge the taint of his illegal detainment. Additionally, the trial court, which was in the best position to weigh the evidence and assess the credibility of the witnesses ruled against suppression. This conclusion suggests that the court fully accredited the

sufficient to purge the taint of his detention. This factor, therefore, weighs against suppression.

Finally, we consider the purpose and flagrancy of the official misconduct. The question is whether the illegality, in this case unlawful detention, was purposeful or flagrant. Id. at 676. Considering this question, this Court in Huddleston, as well as the United States Supreme Court in McLaughlin, focused on the reason for the continued detention of the arrestee; that is, whether the individual was being held without probable cause "for the purpose of gathering additional evidence to justify the arrest. . . ." McLaughlin, 500 U.S. at 56, 111 S. Ct. at 1670, 114 L. Ed. 2d at 63; Huddleston, 924 S.W.2d at 676. In Huddleston, we determined that the arresting officer did not have probable cause to arrest the defendant and that the defendant "was detained so that the police 'could continue the investigation and develop additional evidence.'" Huddleston, 924 S.W.2d at 676; see Brown, 422 U.S. at 605, 95 S. Ct. at 2262, 45 L. Ed. 2d at 428 (where the Court noted that the arrest of the defendant was "'for investigation' or for 'questioning'" and therefore "[t]he arrest, both in design and in execution, was investigatory.").

Here, Carter concedes that probable cause existed for the initial warrantless arrest. Moreover, there is no evidence that Carter was held for the purpose of gathering additional evidence or for other investigatory purposes. Finally, the officer having obtained an arrest warrant (albeit invalid) one day after Carter's warrantless arrest, suggests the absence of purposeful misconduct. Indeed, Carter concedes the lack of evidence of purposeful misconduct. Thus, this factor weighs against suppression.

This concession notwithstanding, Carter insists that he was detained under "harsh" conditions and that he was purposely subjected to these conditions so that he would be coerced to confess. For example, he says that he was locked in a single-person cell with the light always on, he was denied toilet paper, and, despite the officer's knowledge of his mental history, he was denied his prescribed medications. This evidence, however, does not bear on whether the officers had ulterior reasons for the unlawful detention. In other words, their treatment of Carter while he was detained is irrelevant in determining if their conduct falls within the Huddleston definition.

Accordingly, after considering the above factors, we conclude that Carter's confession, although made while Carter was held in violation of the Fourth Amendment, was not the product of the unlawful detention.[8]

---

evidence offered by the State and is entitled to great deference. See State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999) (citation omitted).

[8]The State urges this Court to find that Carter's confession was properly admitted under the "good faith" exception to the exclusionary rule established in the United States Supreme Court decision of United States v. Leon. 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Although Carter's claims are based solely on the United States Constitution, there is no reason to address the applicability of the good faith exception because we have found that Carter's confession was properly admitted at trial under Fourth Amendment jurisprudence. Moreover, this Court has

To determine whether Carter's confession was obtained in violation of Tenn. R. Crim. P. 5(a) and, if so, the effect upon admissibility, we must again resort to the Huddleston analysis. Tennessee Rules of Criminal Procedure 5(a) provides that:

> Any person arrested except upon a capias pursuant to an indictment or presentment shall be taken without unnecessary delay before the nearest appropriate magistrate of the county from which the warrant for arrest issued, or the county in which the alleged offense occurred if the arrest was made without a warrant unless a citation is issued pursuant to Rule 3.5.

Tenn. R. Crim. P. 5(a) (emphasis added). This Court has held that if an individual is not brought before a magistrate within 72 hours, there has been "unnecessary delay." See Huddleston, 924 S.W.2d at 670. Therefore, because Carter was held without having been taken before a magistrate within 72 hours, there was unnecessary delay within the definition of Tenn. R. Crim. P. 5(a).[9]

Having found "unnecessary delay," we must next determine its effect upon the admissibility of the confession. A confession is not necessarily excluded from evidence simply because it was obtained during a period of "unnecessary delay." Id. Rather, a confession is excluded "only if an examination of the totality of the circumstances reveals that the . . . [confession] was not voluntarily given." Id. In determining if a confession was voluntary, courts are to consider the following:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured[,] intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

---

yet to adopt the exception, and we decline to address its validity under the Tennessee Constitution until the issue is squarely presented.

[9]In its brief the State concedes a violation of Tenn. R. Crim. P. 5(a) noting that "[n]othing in the record in this case shows that the delay of three full business days in taking Carter before a magistrate following his warrantless arrest, as required by Tenn. R. Crim. P. 5(a), was necessary based on any articulated reason."

Id. at 671 (citing State v. Readus, 764 S.W.2d 770, 774 (Tenn. Crim. App. 1988). Thus, "the focus on unnecessary delay should not be solely on the length of the delay, but rather on the circumstances of the delay and their effect on the accused." Huddleston 924 S.W.2d at 671.

Applying the above factors to this case, the Court of Criminal Appeals noted that:

> at the time of . . . [Carter's] confession . . . [he] was 28 years of age and had a high school education. He had no prior involvement with the police. Although . . . [Carter] had declined to make [a] statement . . . prior to his confession, his confession was not the result of repeated and prolonged interrogation. [Carter] . . . requested to speak with the sheriff at approximately 8:00 p.m. [Carter] signed a written waiver at 9:19 p.m. and signed his sworn statement at 9:38 p.m. In addition to receiving . . . [his] Miranda rights just prior to the confession, . . . [Carter] had been given the Miranda rights on prior occasions. There is no showing that [Carter] did not understand these rights. The period of time between the issuance of the arrest warrant and the confession consisted of approximately three (3) days. [Carter] . . . was not intoxicated at the time of the confession, nor was he under the influence of any drugs.

Moreover, the Court of Criminal Appeals found that although Carter had taken medication for depression prior to his arrest, he had not taken any medication during the period of detention prior to confessing. There is, however, no proof that Carter's medication was purposefully withheld, and there was no showing that Carter was incompetent. Additionally, Carter presented no evidence that he had been deprived of food, sleep, or medical attention. Finally, Carter was neither physically abused nor threatened with such abuse. Thus, the Court of Criminal Appeals found Carter's confession was not a product of unnecessary delay.

On the other hand, there are factors in this case which weigh in favor of suppression. For example, Carter's age and experience with law enforcement and, if true, his placement in solitary confinement with a light constantly on and with no toilet paper constitute such factors. We agree, nonetheless, with the Court of Criminal Appeals that given the totality of the circumstances, Carter knowingly and voluntarily waived his rights and confessed. Thus, we conclude that Carter's confession was not a product of the unnecessary delay in bringing him before a magistrate. Therefore, his confession was properly admitted at trial.

V

For the reasons articulated above, Carter's confession was properly admitted at trial. We, therefore, affirm the decision of the Court of Criminal Appeals.

Costs of this appeal are assessed to the State of Tennessee.