IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 26, 2005

## STATE OF TENNESSEE v. KEVIN BUFFORD

**Appeal from the Criminal Court for Davidson County**
**No. 2001-D-2298   Seth Norman, Judge**

No. M2004-00536-CCA-R3-CD - Filed June 24, 2005

The appellant, Kevin Bufford, pled guilty to one (1) count of aggravated robbery and one (1) count of carjacking while reserving a certified question of law for appeal.  In that certified question of law, the appellant challenges the trial court's denial of a motion to suppress the evidence obtained as the result of what the appellant argues was an illegal arrest.  Because we determine that the certified question is not dispositive, we dismiss the appeal and remand the matter to the trial court for any further proceedings which may be necessary.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed, Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Mike J. Urquhart, Nashville, Tennessee, for the appellant, Kevin Bufford.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; Victor S. Johnson, District Attorney General, and Scott McMurtry, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

Factual Background

The appellant and a co-defendant were indicted by the Davidson County Grand Jury for two (2) counts of aggravated robbery and two (2) counts of carjacking arising out of four (4) separate acts that occurred on July 29, July 31 and August 6, 2001.  The appellant pled not guilty to all of the counts on December 12, 2001.

In October of 2002, the appellant filed a motion to suppress based on what he argued was an illegal arrest.  Specifically, the appellant argued that "all of the evidence seized as a result of the

arrest and the subsequent statements [of the appellant] should be suppressed as a result of the of the [sic] illegal conduct of the police."

In January of 2003, the trial court held a hearing on the motion to suppress. At the hearing, Officer Michael Gilliland of the Metro Police Department testified that he was on duty in the early morning hours of August 7, 2001. Earlier that evening, dispatch issued a "be on the look out" or "BOLO" for a stolen vehicle, specifically a white Saturn, that was reportedly stolen by two (2) young black males.

Around 2:00 a.m., a fellow officer informed Officer Gilliland that the vehicle was traveling on Dickerson Road. The officer observed the vehicle pull into an apartment complex. By the time the officer reached the vehicle, the door was open and no one was inside. The officer ran the tags on the vehicle, and it matched the vehicle that was stolen in the robbery earlier that evening. The officers saturated the area in an attempt to locate the suspects.

Approximately ten (10) minutes later, Officer Gilliland saw two (2) young black males walking down the street about one-and-a-half (1 1/2) to two (2) blocks away from the abandoned vehicle. As he approached the men, they parted ways. Officer Gilliland approached Denevie Bell and asked him to take his hands out of his pockets. Mr. Bell refused and Officer Gilliland repeated the request until he finally complied. As Officer Gilliland completed a pat-down search of Mr. Bell, he discovered a bag of marijuana and two (2) cell phones.[1] Officer Gilliland also found a .380 caliber pistol in a nearby ditch. When questioned, Mr. Bell claimed that the appellant had given him the gun.

Officer Desmond Sumerul was involved in the arrest of the appellant. Officer Sumerul responded to the area of Hillhurst and Sunset when he learned that the stolen vehicle was located. While parked on Sunset, a citizen drove up beside Officer Sumerul and asked him what was going on in the area. Officer Sumerul told the citizen that they were searching for two (2) black males. The citizen informed Officer Sumerul that two (2) individuals matching that description were walking up Hillhurst. Officer Sumerul quickly went to this location and saw the appellant and co-defendant walking down the street. The two (2) men split up as the officer approached. Officer Sumerul stopped the appellant, patted him down to make sure he did not have any weapons, and placed him in the back seat of his patrol car. Officer Sumerul then transported the appellant down the street to the location where Officer Gilliland had apprehended Mr. Bell.

Detective Bill Stuart of the Metro Police Department described the four (4) crimes which led to the indictment of the appellant and the co-defendant, Mr. Bell. The first victim, Mary Johnson, was robbed on July 29 while she was at a cemetery on Gallatin Road visiting her husband's grave. The victim's car was stolen and it was later determined that the appellant and Mr. Bell used her vehicle when they robbed a Wendy's restaurant. Detective Stuart stated that both the appellant and

_____

[1]One of the cell phones was later discovered to be a cell phone that was taken in the robbery that occurred on August 6.

Mr. Bell confessed their involvement in the robbery of Ms. Johnson and gave detailed statements about the crime.

The second victim was carjacked by the appellant and Mr. Bell on the same day, about three (3) hours later. The second victim was at a gas station when she was pulled from her car. The appellant drove off in her car. Detective Stuart stated that both the appellant and Mr. Bell confessed to being involved in the carjacking.

The third crime occurred on July 31, 2001, when a Wendy's restaurant was robbed on West End Avenue at approximately 3:00 a.m. The appellant and Mr. Bell entered the restaurant and stole money. The robbery was caught on video by the surveillance cameras. Again, Detective Stuart testified that both the appellant and Mr. Bell confessed to their involvement at the crime. Detective Stuart stated that the car used in the robbery of the Wendy's was the same green Mazda that was stolen two (2) days earlier from Ms. Johnson.

The final victim was robbed on Woodland Street. According to Detective Stuart, the victim went out to his white Saturn to look for his wallet when the appellant approached him with a gun. The appellant took the car keys from the victim and drove off in the car. Detective Stuart also informed the court that both men confessed to being involved in the robbery. That victim later identified Mr. Bell from a photo line-up at the Night Court Commissioner's Office.

At the conclusion of the hearing, the trial court took the motion to suppress under advisement. Later, in a written order, the trial court denied the motion to suppress. The trial court determined:

> With regard to the stop of [the appellant], the facts surrounding the search and seizure of his person are not quite as lucid as that of Mr. Bell. However, it appears as though Officer Sumerel [sic] did have sufficient level of reasonable suspicion to affect the stop. As aforementioned, both of the defendants were initially seen walking together on Hillhurst Drive, but upon being spotted, they suddenly parted company and went in different directions. Among other things, the defendants fit the description of the suspects with regard to their numbers: two. [The appellant's] observed association with Mr. Bell raised the suspicion that classified them as suspects. Officer Sumerel [sic] placed [the appellant] in his patrol car and met up with Officer Gilliland and Mr. Bell, who were approximately one hundred feet down the road. . . . The defendants were initially seen walking together about ten minutes after the stolen vehicle was found abandoned only two blocks away. The two fit the description given over the police radio. It was 2:00 a.m. and they were the only people out on the street in a residential neighborhood. Due to [the appellant's] association with Mr. Bell, along with the aforementioned facts, it seems as though both officers had reasonable suspicion to stop the defendants.

On January 29, 2004, the appellant entered a written guilty plea to Count 2 of aggravated robbery and Count 4 of carjacking. Count 2 related to the robbery of the Wendy's and Count 4 related to the green Mazda that was stolen from Ms. Johnson at the cemetery. Mr. Bell pled guilty to Count 1 and Count 3. At the guilty plea hearing, the prosecutor stated that, had the case gone to trial, the State would have subpoenaed witnesses to testify under oath that:

> [O]n August 6, 2001 Mr. Bell and [the appellant] used a gun to take a car from one Jeffrey Thomas within the boundaries of Davidson County.
>
> . . . .
>
> [O]n the 31st day of July, they used a deadly weapon to take money from a Carl Roberts [at Wendy's] within the boundaries of Davidson County.
>
> On the 29th day of July 2001, they used a weapon to take a car from Valerie Bundy Debates here in Davidson County. And on that same day they took another car from a Ms. Mary Johnson, also with the use of a deadly weapon.

The appellant agreed that the facts, as submitted by the prosecutor were "basically true and correct." As a result of the guilty plea, the appellant was sentenced to a period of eight (8) years as a Range I standard offender for the aggravated robbery conviction and eight (8) years as a Range I standard offender for the carjacking conviction. The sentences were ordered to be served consecutively. As a part of the guilty plea, the appellant reserved the following certified question of law:[2]

> Whether this Court [the trial court] by written order dated March 11, 2003 . . . and after an evidentiary hearing, failed to suppress the defendant's statements and all the evidence that flowed from the defendant's arrest. Said arrest which the defendant submits was made without reasonable suspicion nor [sic] probable cause and in violation of the defendant's constitutional rights under both the Tennessee Constitution and United States Constitution as stated in the defendant's written suppression motion. Said order being based upon the testimony of the State's witnesses at said hearing and the record as a whole.

Analysis

At the outset, we note that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d

---

[2] From the record, it does not appear that Mr. Bell reserved the certified question of law pertaining to propriety of his arrest or the trial court's denial of the motion to suppress.

861, 864 (Tenn. 1998)). "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn.1997).

Mindful of the standard of review on review of a motion to suppress, we acknowledge that our review is constrained by the fact that the appellant's appeal is based solely on a certified question of law. When an appeal is brought by certified question of law, no issue beyond the scope of the certified question may be considered by this Court. State v. Pendergrass, 759 S.W.2d 647, 650 (Tenn. 1988). Therefore, the only question we may address is the propriety of the trial court's denial of the motion to suppress.

Among the requirements of a proper certified question of law is that it must be "dispositive of the case." Tenn. R. Crim. P. 37. An issue is dispositive when the appellate court "'must either affirm the judgment or reverse and dismiss.'" State v. Walton, 41 S.W.3d 75, 96 (Tenn. 2001) (quoting State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never deemed to be dispositive when the appellate court might reverse and remand. Wilkes, 684 S.W.2d at 667. Here, all parties and the trial court certified the issue was dispositive; however, an appellate court is not bound by the trial court's determination that an issue is dispositive. Preston, 759 S.W.2d 647, 651 (Tenn. 1988). Rather, the appellate court must make an independent determination of the dispositive nature of the issue and must deny appellate review if the court determines the issue is not dispositive. Id.

The question presented in the appeal herein is not dispositive. The proof submitted at the suppression indicated that the surveillance camera showed the appellant and Mr. Bell robbing the Wendy's in the green Mazda that was stolen earlier from Ms. Johnson. Mr. Bell confessed his involvement in the crime and implicated the appellant as the other participant. Mr. Bell subsequently pled guilty and did not join the appellant in this appeal of a certified question of law. In other words, even if we were to determine that the trial court should have granted the motion to suppress, the State still could have taken the appellant to trial on the evidence that existed separate and apart from his statements made after his alleged unlawful arrest.

Therefore, we conclude the certified question of law is not dispositive of case, and, for lack of jurisdiction, we must deny appellate review of the issue as it applies to these offenses. See Preston, 759 S.W.2d at 651. Accordingly, the appellant's appeal is dismissed.

### Conclusion

For the foregoing reasons, we dismiss the appellant's appeal and remand the matter to the trial court for any further proceedings which may be necessary.

_____
JERRY L. SMITH, JUDGE