# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
July 23, 2014 Session

## STATE OF TENNESSEE  v. WILLIAM WHITLOW DAVIS, JR.

**Appeal from the Criminal Court for Knox County**
**No. 95235      John F. Dugger, Jr., Judge**

---

**No. E2013-02073-CCA-R3-CD - Filed December 8, 2014**

---

The defendant, William Whitlow Davis, Jr., pleaded guilty to first offense driving under the influence of an intoxicant with a blood alcohol level of .08 percent or more and reserved as a certified question the propriety of the vehicle stop leading to his arrest. Determining that the evidence does not preponderate against the trial court's findings in its order denying the motion to suppress, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., and TIMOTHY L. EASTER, SP. J., joined.

Donald A. Bosch and Ann C. Short, Knoxville, Tennessee, for the appellant, William Whitlow Davis, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Sarah Keith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Knox County Criminal Court grand jury charged the defendant with alternative counts of driving under the influence of an intoxicant ("DUI") and driving with a blood alcohol concentration of .08 percent or more ("DUI per se"), as well as failure to drive within a single lane of traffic. On December 11, 2012, the defendant filed a motion to suppress evidence of his intoxication, contending that the traffic stop which led to his arrest constituted an illegal seizure.

At the August 12, 2013 evidentiary hearing on the motion to suppress, Knox

County Sheriff's Department Officer Jerry Massey testified that, on October 23, 2009, he received a report from dispatch to be on the lookout ("BOLO") for "a green BMW" whose driver "had a loaded handgun and was under the influence" following a domestic altercation. After ascertaining that the driver, later identified as the defendant, resided on Keller Bend Road, Officer Massey proceeded to the intersection of Keller Bend and Northshore Drive, and he parked his cruiser in a parking lot at that intersection. Approximately 25 minutes after receiving the BOLO, Officer Massey saw the defendant drive by on Keller Bend, a two-lane road, heading southbound. Officer Massey began to follow the defendant, and he testified that he witnessed the defendant cross the center double yellow lines "a couple of times, several times" before he initiated his video recording equipment. Officer Massey also opined that the defendant was "traveling in excess of the 25 miles an hour posted speed limit" based on his pacing of the defendant.

At 2:28:22 a.m., Officer Massey turned on his cruiser's video recorder. The video recording reveals that Officer Massey followed the defendant's vehicle for approximately 33 seconds before activating his blue lights to stop the defendant. The video recording shows that, before the emergency equipment is activated, the defendant's left tire touched the center line once at approximately 2:28:41, and at 2:28:53, the defendant's left tires crossed over the double yellow lines. Officer Massey activated his blue lights two seconds later, and the defendant stopped his vehicle shortly thereafter.

On cross-examination, Officer Massey acknowledged that he found no weapon when he stopped the defendant. Officer Massey also conceded that Keller Bend is a curvy road "without shoulders" which "drops off into dirt, gravel or woods." Officer Massey stated that only "the left portion" of the defendant's vehicle crossed the double yellow lines and that there was no oncoming traffic at that time.

At the conclusion of the hearing, the trial court concluded that the defendant's crossing of the double yellow lines gave Officer Massey "reasonable and articulable facts that it was a violation, enough for a . . . traffic stop, certainly, and for a ticket on violation of the rules of the road." Although the trial court could not find clear and convincing evidence that the defendant was speeding, the court determined that the defendant had "clearly" violated Tennessee Code Annotated sections 55-8-115 and 55-8-120.

Following the trial court's denial of a motion to suppress, the defendant pleaded guilty to DUI per se, and the remaining charges were dismissed by agreement. The defendant also reserved, with the consent of the State and the trial court, a certified question of law that is dispositive of the case:

In the early morning hours of October 23, 2009, Knox County

Sheriff's Deputy Massey observed a vehicle driven by the defendant traveling on Keller Bend Road in Knox County. Deputy Massey effected a seizure of the defendant by activating his emergency lights, in response to which the defendant stopped his vehicle. Deputy Massey subsequently arrested the defendant and took him into custody for the offense of DUI. Did the trial court correctly conclude that the state carried its burden to show that the traffic stop of the defendant was justified by reasonable suspicion or probable cause that a criminal offense had been or was about to be committed, based on the manner in which the defendant was operating his vehicle on Keller Bend Road[?]

Discerning that this question was properly certified pursuant to Tennessee Rule of Criminal Procedure 37(b), we will examine the trial court's ruling on the motion to suppress.

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, we are guided by the standard of review set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. When the trial court does not set forth its findings of fact upon the record of the proceedings, however, the appellate court must decide where the preponderance of the evidence lies. *Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). We review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See, e.g.*, *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), the State in the present situation had the burden of demonstrating the applicability of an exception to the warrant requirement, *see, e.g.*, *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (temporary detention of an individual during a traffic stop constitutes seizure that implicates the protection of both the state and federal constitutions); *Keith*, 978 S.W.2d at 865. The authority of a police officer to stop a citizen's vehicle is circumscribed by constitutional constraints. Police officers are constitutionally permitted to conduct a brief investigatory stop supported by specific and articulable facts leading to a reasonable

-3-

suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-23 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Whether reasonable suspicion existed in a particular case is a fact-intensive, but objective, analysis. *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). The likelihood of criminal activity that is required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A court must consider the totality of the circumstances in evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). The totality of the circumstances embraces considerations of the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993). The objective facts on which an officer relies may include his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

On appeal, the defendant argues that his driving imperfections did not rise to the level of affording reasonable suspicion to justify Officer Massey's stop. We disagree. This court has previously held that a defendant's crossing of the double yellow lines on a single occasion is sufficient to provide "probable cause to initiate a traffic stop under Tennessee Code Annotated sections 55-8-121 or 55-8-123." *State v. Watson*, 354 S.W.3d 324, 331 (Tenn. Crim. App. 2011); *see also State v. Carlie D. Schoenthal*, No. E2010-01312-CCA-R3-CD, slip op. at 4-5 (Tenn. Crim. App., Knoxville, Apr. 27, 2011) (holding that the defendant's "crossing of the double yellow lines and briefly driving on the wrong side of the road amounted to more than simply poor driving technique" and provided officer with reasonable suspicion to stop defendant); *State v. Harold Russell Gregory*, No. M2002-01461-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Nashville, July 29, 2003), *perm. app. denied* (Tenn. Dec. 15, 2003) (holding that "once the defendant crossed the double yellow line . . . [the officer] had the right to stop him"). That the trial court in the instant case relied on statutory violations other than those relied on by the court in *Watson* is of no consequence; all four statutes effectively proscribe driving on the wrong side of the road. *Compare* T.C.A. § 55-8-115(a) ("Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway, . . . .") *and* § 55-8-120(a)(1) ("No vehicle shall at any time be driven to the left side of the roadway under the following conditions: . . . [w]hen approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within three hundred feet . . . or such distance as to create a hazard in the event another vehicle might approach from the opposite direction") *with* T.C.A. § 55-8-121 ("The department of transportation is authorized to determine those portions of any highway where . . . driving to the left of the roadway would be especially hazardous and may by appropriate

-4-

signs or markings on the roadway indicate the beginning and end of those zones.") *and* § 55-8-123(1) ("Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this section, shall apply: . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety").

In the instant case, Officer Massey observed the defendant's vehicle's left tires briefly touch the double yellow lines and, a few seconds later, Officer Massey observed the left tires cross the double yellow lines into the lane of oncoming travel. The video recording from the officer's dashboard camera confirmed his testimony. Based on these facts, case law supports a finding of not just reasonable suspicion, as found by the trial court, but probable cause to stop the defendant's vehicle. *See Watson*, 354 S.W.3d at 331. Under either standard, the stop of the defendant's vehicle was proper, and we affirm the trial court's denial of the motion to suppress.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE