IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 17, 2016

**STATE OF TENNESSEE v. GUY LEE POWELL**

**Appeal from the Criminal Court for Hancock County**
**No. 13CR017     John F. Dugger, Jr., Judge**

_____

**No. E2015-00741-CCA-R3-CD – Filed April 19, 2016**

_____

After a bench trial, the Defendant, Guy Lee Powell, was convicted of manufacturing a controlled substance, possession of a controlled substance with intent to sell or deliver, felony possession of drug paraphernalia, and possession of a still.  The trial court imposed concurrent sentences for an effective sentence of two years' incarceration.  On appeal, the Defendant challenges the trial court's denial of his motion to suppress evidence seized from his premises during a search.  After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Jonathan M. Holcomb, Morristown, Tennessee, for the appellant, Guy Lee Powell.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Dan Armstrong, District Attorney General; and Connie G. Trobaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

A Hancock County grand jury indicted the Defendant for manufacturing a controlled substance (marijuana); possession of a controlled substance with intent to sell or deliver (marijuana); felony possession of drug paraphernalia; and possession of a still. The Defendant filed a motion to suppress the search of an outbuilding on his property where police found a marijuana plant, bagged marijuana, a distillery, yeast, and other drug paraphernalia.

At the hearing on the Defendant's motion, the parties presented the following evidence: Leamon Maxey, the Hancock County Sheriff, testified that on July 30, 2012, he was investigating a report of the production of moonshine. Some of the landowners who owned property adjacent to the Defendant's property gave law enforcement permission to enter their properties. While on an adjacent property, Sheriff Maxey observed the Defendant near an outbuilding on his property and heard what sounded like a running Weed Eater. Sheriff Maxey said that, while using binoculars and standing on the roadway of the adjacent property, he also observed a marijuana plant outside the Defendant's outbuilding. After seeing the marijuana plant, Sheriff Maxey called Chief Deputy Anthony Maxey "about getting the search warrant." He then walked down to the building and retrieved the "power pole number" to determine ownership of the property.

Sheriff Maxey testified that after Chief Maxey contacted him that the search warrant had been served, he began searching the outbuilding on the Defendant's property. He explained that the Defendant's residence was located at the front of the Defendant's property. The outbuilding was located on "the backside" in a wooded area. The officers approached the Defendant's property from the rear. He estimated that he was approximately 400 feet from the outbuilding when he first observed the marijuana plant. Sheriff Maxey said that he identified the plant outside the outbuilding as marijuana based on his experience and the distinct shape of the leaves.

Sheriff Maxey testified that, while he waited for the search warrant, he had observed the area on which a Weed Eater had been used, a shovel, sugar bags, a burn pile with sugar and yeast bags in it, and various tools. After the search warrant was executed, officers found inside the building another marijuana plant, a distillery, potting soil, yeast, a bag of marijuana in a refrigerator, scales, and marijuana leaves. After the search warrant was served, the Defendant walked from his home to the outbuilding and was present for the search.

Anthony Maxey, the chief deputy for the Hancock County Sheriff's Department, testified that Sheriff Maxey contacted him on July 30, 2012, about possible drug activity on a property located off of Sherm Mountain Road. Chief Maxey applied for a search warrant and then executed the search warrant. While preparing the affidavit for the search warrant, Chief Maxey relied on information provided by Sheriff Maxey and Deputy Pettiecord. In preparing the description of the location for the affidavit, Chief Maxey relied upon information from the officers present, the Tennessee Property Viewer, and the GPS coordinates retrieved from the Tennessee Property Viewer.

Chief Maxey testified that, once the judge signed the search warrant, he and Detective Brewer served the warrant on the Defendant at a residence. Chief Maxey said that he believed the house was "Effie Neamyer's" residence and that the Defendant

2

stayed there "part of the time." The Defendant then escorted the officers back to the outbuilding. Chief Maxey could not remember specifically the procedure he followed when serving the search warrant, but he said he "normally" explains to the owner of the property why he is there and then reads the search warrant to the owner before conducting the search. Chief Maxey confirmed that he reviewed the return on the search warrant with the Defendant at the jail to make him aware of what property was seized.

On cross-examination, Chief Maxey agreed that the affidavit did not contain any information about the training and experience of the "fellow officers" or of Chief Maxey's own training.

The Defendant testified and identified survey maps of "[his] and [his] girlfriend's property." He testified that there was not a "logging road" on his property but that there was a logging road on his neighbor's property, which allowed for access to his property. The Defendant stated that the vegetation in the area surrounding the outbuilding was "[t]hick and heavy" making a "clear line of sight" from the adjacent property impossible. The area was also very hilly. The Defendant identified a photograph of a "no trespassing" sign located at the front of his property near his driveway. Near that sign was another sign that read, "Trespassers will be shot and then violated." The Defendant identified a final picture of a "no trespassing" sign posted where his neighbor's property ended and the Defendant's driveway began.

The trial court stopped the hearing due to confusion over the specific locations of the various pictures of the property being submitted to the trial court as evidence. The trial court asked the State to take a picture of the view from where Sheriff Maxey stood when he observed the marijuana plant outside of the Defendant's outbuilding and rescheduled the hearing for April 17, 2013.

At the April 17 hearing, Sheriff Maxey testified that, since the last hearing, he had gone to the adjacent property and photographed the Defendant's outbuilding from where he first saw the marijuana plant. Sheriff Maxey stated that his testimony during the first hearing about his location as he marked it on the survey map was incorrect. Sheriff Maxey marked, on the same survey map, with the indication "2," his actual location at the time he observed the Defendant's outbuilding and the marijuana plant and marked a "1" next to where he had incorrectly indicated his location during the first hearing. He explained that the Tennessee Property Viewer map did not show a driveway outside of the property, and he knew he had been on either a driveway or a logging road. The only indication of a road was at the rear of the property, so he marked that roadway due to his certainty that he was on a driveway or logging road at the time.

3

Sheriff Maxey testified that he had used binoculars on the day of the search to confirm that the plant was marijuana. The State then submitted two photographs of the outbuilding taken from where Sheriff Maxey had stood when he first saw the outbuilding. One of the photographs, was taken with a telephoto lens and one was taken without the lens. In both photographs the outbuilding can be clearly seen. The State also submitted a photograph of a "property pin" and the road that Sheriff Maxey referenced when speaking of his location upon seeing the outbuilding and marijuana plant. A photograph of the fence line that ran along the logging road was also admitted into evidence. Sheriff Maxey stated that, when he returned to the property, Officer Terry Kinsler and a photographer accompanied him. The photographer recorded video footage of the area. On cross-examination, Sheriff Maxey stated that the adjacent property owner had told him that the fence line marked the property line before the officers walked out onto the property.

The trial court again continued the hearing to allow the State to speak with the adjacent property owner to confirm that the fence that ran along the logging road or driveway was the property line. At the subsequent hearing, Carl Seal testified that he owned property that adjoined the Defendant's property on Sherm Mountain Road. Mr. Seal purchased his property approximately twelve years earlier and, at the time of the purchase, hired a surveyor to determine the lines of his property.

Mr. Seal testified that Sheriff Maxey had asked him to show him the property lines. Sheriff Maxey showed Mr. Seal where he was standing when he first observed the Defendant's outbuilding. The State showed Mr. Seal the photographs that Sheriff Maxey had taken of the location and that the State had submitted as evidence at the prior hearing. Mr. Seal identified his property in the photographs and stated that he knew it was his property because he is familiar with the lines of his property based upon the survey. Mr. Seal identified the road on his property in one of the photographs. Mr. Seal confirmed that he gave members of the Sheriff's Department permission to enter the land on the day they discovered the Defendant's marijuana plant.

On cross-examination, Mr. Seal testified that he had never seen the Defendant's outbuilding from his property because he had "never been close enough." He agreed that Sheriff Maxey showed him where Sheriff Maxey had been standing when he first observed the Defendant's outbuilding and that Mr. Seal could not see the outbuilding from that location. He explained that he "never even looked for a [outbuilding]." He also noted that the trees did not have leaves in the photographs providing a clearer view of the outbuilding.

After the hearing, the trial court made the following ruling:

4

Court finds that . . . Sheriff Maxey had permission from Carl Seal and Gary Hicks and Ray Robinson to go to properties and look for marijuana. Carl Seal has testified today that the sheriff has taken him to the spot where he was standing when he observed [a] marijuana plant growing on the porch of a small cabin which is in exhibit fourteen, but exhibit fourteen was taken when there were no leaves on the trees. This occurred on July the 30th, 2012. Mr. Seal said that he couldn't see a cabin. However, the sheriff testified that he was armed with binoculars on that day and that he saw marijuana plants growing on the porch of the cabin and he walked down to the cabin. The cabin was open, and he could see paraphernalia in the cabin. Search warrant obtained from that and subsequent search, in count one is two marijuana plants and then there was a subsequent 310.55 grams of marijuana found along with other things.

The Court finds that . . . based on the testimony of the sheriff . . . and Mr. Seal, the owner of the property, the adjacent property, and the sheriff says that he saw it with binoculars. So the Court believes that he was in a place that he had a right to be and that he observed the marijuana and he could secure the scene until he obtained the search warrant and everything that he saw while he was there is in the affidavit and search warrant was in plain view and no search was completed until they got the search warrant. So your motion to suppress is denied.

An appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial when reviewing a motion to suppress. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). As such, we also include Josh Pettiecord's testimony from the trial. Deputy Pettiecord testified that, after receiving consent from the property owners, he accompanied Sheriff Maxey onto some property where authorities had information that there was an illegal moonshine still. He stated that they began on Mr. Seal's property and heard a radio playing and a running weed eater. Deputy Pettiecord positioned himself to see who was in the area, and he observed the Defendant's truck.

Deputy Pettiecord testified that, at some point, the Defendant got in his truck and drove out through Mr. Seal's property to the main road. The officers "kind of hid" as the Defendant drove down Mr. Seal's road. The officers then returned to the edge of the fence and, with the use of binoculars, saw the outbuilding and a marijuana plant. Based upon this observation, Deputy Pettiecord and Sheriff Maxey walked down to the property to secure the marijuana plant and called Chief Maxey to ask him to seek a search warrant. After the search warrant was brought to the scene and served, the officers entered the outbuilding.

Deputy Pettiecord testified that, while securing the marijuana plant, he observed the numbers on the power pole and contact was made with Powell Valley Electric to ascertain ownership. Deputy Pettiecord and Sheriff Maxey remained outside the outbuilding until Chief Maxey approached from the Defendant's residence after serving the warrant on the Defendant. Once Chief Maxey and the Defendant arrived, the search of the inside of the building commenced.

Deputy Pettiecord testified that the inside of the building was "like a barn" with a dirt floor, except for one room that had drywall and a floor. In this room he observed buckets, fertilizer, and "grow lights." Inside other parts of the building he saw a moonshine still, a jar of moonshine, marijuana on a table, a set of scales, and a refrigerator. Inside the refrigerator was turbo yeast and a bag of marijuana. Deputy Pettiecord stated that there was also a Weed Eater sitting outside the front door of the outbuilding.

On cross-examination, Deputy Pettiecord confirmed that he saw the Defendant and the Defendant was using the Weed Eater. Deputy Pettiecord agreed that he photographed the marijuana plant and the number on the power pole while securing the marijuana plant. Deputy Petticord stated that, through radio transmission, the officers were made aware that the warrant had been served. A follow-up phone call indicated that the Defendant wanted to be present. Deputy Petticord said that he entered the outbuilding as Chief Maxey and the Defendant walked up.

## II. Analysis

The Defendant appeals, asserting that the trial court erred when it denied his motion to suppress because: (1) the location stated in the search warrant was not specific enough; and (2) there were no exigent circumstances to justify law enforcement entering his property and the illegal seizure of the marijuana plant sitting outside the Defendant's outbuilding.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the law to the facts, without according any presumption of

6

correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

The State asks us to waive the Defendant's first argument regarding the sufficiency of the location description in the search warrant because this issue was not raised in the Defendant's motion for new trial or at the motion for new trial hearing, thereby preventing the trial court from ruling on the issue and limiting this Court's ability to effectively review the trial court's ruling. Further, at the suppression hearing, the Defendant made no argument to the trial court regarding the sufficiency of the location description in the search warrant. According to Tennessee Rule 3(e) of Appellate Procedure, "no issue presented for review shall be predicated upon error . . . admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." The Advisory Commission Comments add that "relief need not be granted to a party who fails to take whatever action is reasonably available to prevent or nullify the harmful effect of error." We agree with the State that the Defendant has waived our review of the sufficiency of the location description in the warrant. We turn now to the Defendant's argument that law enforcement illegally entered his property.

Law officers are permitted to temporarily seize property to secure a scene while awaiting a search warrant when probable cause exists and there is a "need for immediate action to prevent the departure" of evidence from the jurisdiction. *State v. Hawk*, 688 S.W.2d 467, 471 (Tenn. Crim. App. 1985). In essence, probable cause and exigent circumstances are required to justify this temporary warrantless seizure. *Id.* The mere possibility, though, that evidence will be removed or destroyed does not permit such a seizure. *Id.* Our Supreme Court has said, "[T]he curtilage [of residential property] is entitled to the same constitutional protection against ground entry and seizure as the home." *State v. Prier*, 725 S.W.2d 667, 671 (Tenn. 1987).

The Defendant insists the officers' intrusion upon his property violated his Fourth Amendment rights. The evidence does not support that contention. The deputies, based upon a complaint about the production of moonshine, lawfully gained access to adjoining property. Once on the adjoining property, officers heard a running weed eater and saw the Defendant in the area of the outbuilding. With the use of binoculars, officers observed a marijuana plant located outside the Defendant's outbuilding in the same area from which the sound of the Weed Eater was emanating. It is clear that exigent

circumstances existed, as found by the trial judge, which warranted officers going on the Defendant's property. Exercising an abundance of caution, the officers secured the premises while they obtained a search warrant. The evidence shows both probable cause for obtaining the search warrant and the need for immediate action to prevent the destruction of the marijuana plant existed. The officers had information regarding the illegal production of moonshine, observed a marijuana plant in a portable container, and knew the Defendant to be in the area at the time. We are satisfied that law enforcement here had sufficient exigent circumstances to warrant the temporary seizure of the premises, as well as probable cause for obtaining the issuance of the search warrant. The Defendant is not entitled to relief.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

8