IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 17, 2005

## STATE OF TENNESSEE v. DARRYL J. LEINART, II

**Appeal from the Circuit Court for Anderson County**
**No. A3CR0294   James B. Scott, Jr., Judge**

_____

**No. E2004-02070-CCA-R3-CD - Filed August 31, 2005**

_____

The defendant, Darryl J. Leinart, II, was indicted on one (1) count of possession of marijuana and one (1) count of possession of drug paraphernalia. The defendant filed a motion to suppress the evidence against him contending that the warrantless search of his residence was illegal. The trial court granted the motion to suppress and the State filed this appeal. We find the State failed to carry its burden in the trial court of proving that the warrantless search of the defendant's residence was valid. The judgment of the trial court is therefore affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Paul G. Summers, Attorney General & Reporter; David E. Coenen, Assistant Attorney General; James N. Ramsey, District Attorney General; Jan Hicks, Assistant District Attorneys General, for the appellant, State of Tennessee.

Roger A. Miller, Clinton, Tennessee, for the appellee, Darryl J. Leinart, II

**OPINION**

Factual Background

On May 10, 2003, Wiley Maloney, a deputy with the Anderson County Sheriff's Department, and the only witness at the hearing on the motion to suppress, responded to a call regarding a disturbance involving a weapon at the defendant's residence. The deputy arrived around 8:00 a.m. and saw Sergeant Womack of the Tennessee Highway Patrol talking to a man in the front yard of the residence. Deputy Maloney asked for the defendant's identification because he did not know the

defendant and wanted to ascertain if the defendant was the owner of the residence. Because a weapon was involved in the disturbance, Deputy Maloney testified he wanted to check for possible outstanding warrants against the defendant. The defendant told Deputy Maloney that his identification was inside the residence.

The defendant explained the reason for the call to Deputy Maloney. The defendant told Deputy Maloney that Daniel Daugherty had spent the night at the defendant's house and caused a disturbance. The defendant said that Mr. Daugherty ran into a bedroom, locked the door and went out the window. When Mr. Daugherty had run into the bedroom, the defendant had grabbed his rifle for his own protection.

After this description of the incident, the officers asked the defendant if they could accompany him inside to get his identification, and he agreed. Once inside the living room, the officers noticed a .22 caliber semi-automatic rifle leaning against a chair by the kitchen table. The rifle was about ten (10) to fifteen (15) feet away from the defendant. Upon seeing the rifle, the officers immediately placed the defendant in handcuffs and cleared the chambers of the rifle. The officers then asked the defendant to show them the room into which Mr. Daugherty had run during the disturbance. He took them to the second bedroom. The defendant remained in handcuffs during this entire time.

When they got to the bedroom, the officers saw a cookie tin sitting open on a dresser beside the bed. The cookie tin contained rolling papers, the remains of a leafy substance and seeds which the officers assumed to be marijuana. The officers took the property into custody and asked permission to search the rest of the house. The defendant gave them permission to search. The defendant was still handcuffed when the officers made this request.

The officers conducted a search of the defendant's house for about an hour. At some point three (3) other officers arrived to help with the search. They found a few old cans containing a green leafy substance and seeds, as well as a set of scales. They also found a baggie in a cupboard that appeared to contain methamphetamine, but the lab results were negative for that substance. The defendant never withdrew his consent for the search, or asked the officers to stop the search. The officers never obtained a search warrant. Following the search of the residence, the officers then asked for permission to search the defendant's car. He gave them permission for the search, but nothing was seized from the car. The defendant remained in handcuffs during the searches and until he was transported to the police department.

On November 4, 2003, the Anderson County Grand Jury indicted the defendant for one (1) count of possession of marijuana and one (1) count of possession of drug paraphernalia. The defendant filed a motion to suppress the evidence seized as a result of the search of the defendant's residence. The State responded to the motion, arguing that the search was conducted pursuant to the defendant's consent, and therefore legal. The trial court held a hearing on the motion to suppress on April 5, 2004. On July 29, 2004, the trial court upon a finding that the defendant's consent was

not voluntary, entered an order granting the defendant's motion to suppress. The State filed a timely notice of appeal.

## ANALYSIS

The State's sole issue on appeal is whether the trial court erred in granting the defendant's motion to suppress. The State argues that the defendant voluntarily consented to the search. At the conclusion of the hearing, the trial court requested the State to submit an argument as to why the search was reasonable under the facts. No such written argument appears in the record on appeal.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. See State v. Walton, 41 S.W.3d 775, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999).

The Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution protect individuals from unreasonable search and seizures by law enforcement officers. A search conducted without a warrant is presumptively unreasonable and at a suppression hearing regarding such a search the State bears the burden of proving that the warrantless search was reasonable. State v. Coulter, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001). This means that the State must prove that the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

### Initial Observation of Apparent Contraband

We begin our analysis by noting that the police officers in this case initially observed what appeared to be a cookie tin with marijuana and paraphernalia upon their entry with the handcuffed defendant into the second bedroom of the residence. This observation was made prior to obtaining consent to search the entire residence. Therefore the question arises as to whether the officers' initial entry into the second bedroom where the contraband was observed in apparent plain sight was lawful.

In Maryland v. Buie, 494 U. S. 325, 334, 110 S. Ct. 1093, 1098, 108 L.Ed.2d 276 (1990), the United States Supreme Court held that when a person is legally arrested in his own home officers may conduct a protective sweep of the rooms and closets in the home if they have reasonable and articulable facts which would warrant a prudent officer to believe that these areas harbor someone

posing a danger to the officer. In the instant case however, Deputy Maloney never suggested that officers feared for their safety from some other person in the home, prompting a protective sweep of the residence.

Therefore, the question becomes whether the initial entry into the second bedroom of the residence was, as the search of the entire residence, based on the defendant's valid consent.

Validity of Consent to Search

One exception to the warrant requirement for a valid search is that an individual gives consent to the warrantless search. Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973). In determining the validity of a consent to search, courts must look at the totality of the circumstances surrounding the obtaining of consent. See United States v. Drayton, 536 U.S. 194 (2002). "[T]o pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). The following factors are used to evaluate the voluntariness of the consent: (1) whether the defendant is in custody; (2) the length of detention prior to the giving of consent; (3) the presence of coercive police procedures; (4) the defendant's awareness of the right to refuse to consent; (5) the defendant's age, education, and intelligence; (6) whether the defendant understands his constitutional rights; (7) the extent of the defendant's prior experience with law enforcement; and (8) whether the defendant was injured, intoxicated, or in ill health. See, e.g., State v. Carter, 16 S.W.3d 762, 769 (Tenn. 2000); see also United States v. Ivy, 165 F.3d 397, 402 (6th Cir. 1998); State v. Terrell Deberry, No. W2004-00018-CCA-R3-CD, 2004 WL 2808908, at *5 (Tenn. Crim. App., at Jackson, Dec. 7, 2004). Although all eight (8) factors are relevant, no single factor is dispositive nor are they all-inclusive factors for determining voluntariness. Id. Of critical importance is factor (1), the voluntariness of the defendant's custodial status, i.e., whether at the time the defendant granted permission to search he was unlawfully detained. Even if consent is voluntarily given, it does not remove the taint of an illegal detention if the consent is the product of that detention and not an independent act of free will. State v. Huddleston, 924 S.W.2d 666, 674 (Tenn. 1996); United States v. Richardson, 949 F.2d 851, 858 (6th Cir. 1991). Moreover, the State must show "more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 549 (1968). As noted earlier, and it bears repeating, the State bears the burden of showing that consent was freely and voluntarily given. State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983).

In the case herein, the State argues that being placed in handcuffs does not automatically translate into consent given under duress. The State cites United States v. Burns, 298 F.3d 523, 541 (6th Cir. 2002) (citing United States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820 (1976)) (holding that consent to search was not invalidated simply because the person giving consent was handcuffed at the time), and United State v. Strache, 202 F.3d 980, 986 (7th Cir. 2000) (holding that where a defendant was handcuffed for twenty minutes and had not been Mirandized, his consent to search still was voluntary) to support their argument. However, these cases are significantly distinguishable

-4-

from the case at bar.  In the cases cited by the State, the police either had probable cause to effect an arrest or the suspect was otherwise legally seized.

Applying the above-listed factors to the case herein, we first note the apparent fact that the defendant was in fact in custody at the time he consented to the search as he was handcuffed from the time he and the officers entered the house until he was transported to the jail after the discovery of the marijuana.  Officer Maloney actually admitted that he had no probable cause to place the defendant in custody merely because the defendant possessed a firearm in his own home.  We determine that the placement of the defendant in handcuffs in his own home prior to being asked for consent to search his home was unreasonable under the circumstances.  In the defendant's case, he first spoke with the officers outside of his home and explained the scenario.  When they went into the house the officers saw the weapon and immediately handcuffed the defendant for their own protection.  Officer Maloney's own undisputed testimony establishes that, the rifle was ten (10) to fifteen (15) feet away.  While we understand the officers' concern for their own safety we believe that under the circumstances there were measures less drastic than handcuffing that could have been taken to ensure the officers' safety.  Thus, we determine that at the time the defendant consented to the search he was in custody and coercive police procedures had been utilized.

However, it appears that the defendant was detained a relatively short time prior to the giving of consent for the search.  There is no proof in the record as to whether the defendant understood his constitutional rights.  Nothing in the record suggests that the defendant was told he had the right to refuse to consent.  The record does not reveal the extent of the defendant's prior experience with law enforcement officials, nor does it reflect the defendant's education, intelligence, physical well-being, or whether any form of  intoxication played a role in the voluntariness of the consent.

In summary, in a case involving a presumptively unreasonable search, the record reveals only that the defendant after summoning assistance from law enforcement was handcuffed at his own residence after officers observed a gun in the residence.  There is no evidence that officers had probable cause to believe the defendant had committed any crime or that, beyond the presence of the gun in the residence, the defendant posed any threat to the officers.  There is no proof in the record that only the rather drastic measure of handcuffing the defendant would have ensured the safety of the officers.  There is no proof in the record concerning any of the other considerations courts should use in evaluating the validity of consent to a warrantless and therefore presumptively unreasonable search.  Under these circumstances we find that the State has failed to carry its burden of proof that this presumptively unreasonable search was valid.

### Conclusion

In light of the foregoing the judgment of the trial court granting the defendant's motion to suppress is affirmed.

_____
JERRY L. SMITH, JUDGE