IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2008

### RONALD DOTSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-26559     W. Fred Axley, Judge**

———————————

**No. W2007-01654-CCA-R3-PC  - Filed August 26, 2008**

———————————

The petitioner, Ronald Dotson, appeals the denial of his petition for post-conviction relief.  In this appeal, he asserts that he was denied the effective assistance of counsel at trial and that this court should remand his case to the trial court for a hearing based upon the holding in *State v. Copeland*, 226 S.W.3d 287 (Tenn. 2007).  Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES, J., and DAVID G. HAYES, SR. J., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Ronald Dotson.

Robert E. Cooper, Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William L. Gibbons, District Attorney General; and Sean Lyons, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

        Initially, the record does not clearly establish which of the petitioner's several convictions he seeks to challenge via this petition for post-conviction relief.  The original pro se petition filed by the petitioner recites a case number of 99-12263 and a conviction date of June 20, 2001.  The opinion of this court apparently filed along with the petition, however, relates to case numbers 99-12264 and 99-12265.  The petitioner notes in his petition that our supreme court denied permission to appeal on January 7, 2003, and designated the opinion of this court as not for citation; however, it appears that permission to appeal was sought only in case number 99-12264.  Moreover, permission to appeal was denied in that case on November 8, 2004.

        At the evidentiary hearing on the petition for post-conviction relief, post-conviction counsel indicated that the petition challenged only "the case which bears Shelby County Indictment

Number 99-12261" and the case "where Mr. Randy White represented" the petitioner. The opinions filed by this court reflect that the petitioner was not represented by "Randy White" in any of the above-mentioned cases but was represented by Russell White in case number 99-12263, *see State v. Ronald Dotson*, No. W2001-02548-CCA-MR3-CD (Tenn. Crim. App., Jackson, Oct. 29, 2002), and Lawrence White in case number 99-12261, No. W2000-03115-CCA-R3-CD (Tenn. Crim. App., Jackson, Dec. 28, 2001). Additionally, the transcripts of the trial proceedings in case number 99-12261, as well as this court's opinion in case number 99-12261, were admitted into evidence at the evidentiary hearing. At the hearing, both the State and the defense confined their respective cases to the conviction in case number 99-12261.[1] Finally, in its order denying post-conviction relief, the post-conviction court found that "[t]he charge at issue in this petition is indictment number 99-12261." From all this, it appears that the original pro se petition was amended to challenge only the conviction in case number 99-12261. Accordingly, we limit our analysis to the conviction in case number 99-12261.[2]

In August 2000, a Shelby County jury convicted the petitioner of one count of aggravated robbery, *see* T.C.A. § 39-13-402, and the trial court sentenced him as a repeat violent offender to life imprisonment without the possibility of parole, *see id.* § 40-35-120.[3] The conviction relates to the June 20, 1998 robbery of Joe's Liquor Store in Memphis. Larry Spence, who was working as a clerk at the liquor store at the time of the offense, testified at the petitioner's trial that a man entered the store, "stepped up to the counter, approximately three to four feet from where Spence stood; 'pulled a pistol'; and ordered Spence to 'give him the money.'" *Ronald Dotson*, slip op. at 2. Mr. Spence later identified the petitioner as the perpetrator from a photographic lineup. *Id.* After his arrest, the defendant provided a statement to police wherein he admitted committing the robbery, explaining that he armed himself with a "BB gun" that resembled a .357 revolver and then "went in and asked the man to give me all his money and he gave it to me and I left."

In his original and amended petitions, the petitioner asserted that he was denied the effective assistance of counsel at trial because his trial counsel failed to seek the suppression of his inculpatory statement and because trial counsel failed to lodge an objection at trial when the trial court ordered the petitioner to stand and speak to aid in Mr. Spence's identification.

---

[1]Because the original pro se petition is unsigned, unverified, and otherwise bears no indication of the date on which it was filed, we are unable to surmise whether the petition was timely filed. The State does not assert, however, that the petition is time-barred. Moreover, other documentation in the record circumstantially establishes the timeliness of the petition.

[2]To be sure, the petitioner is statutorily prohibited from challenging multiple convictions arising from separately tried cases in a single petition for post-conviction relief. *See* T.C.A. § 40-30-104(c) (2006).

[3]Although the opinion of this court in the petitioner's direct appeal indicates that the petitioner was sentenced to "life imprisonment," both the order denying post-conviction relief and the original post-conviction petition record the sentence as life without the possibility of parole. A sentence of "life imprisonment" is not available for one sentenced as a repeat violent offender. *See* T.C.A. § 40-35-120.

At the evidentiary hearing, the 54-year-old petitioner testified that he was arrested at approximately 9:00 a.m. on September 3, 1998, in Wynne, Arkansas, on the basis of a Shelby County arrest warrant. Two plain-clothes detectives transported him to the Shelby County Justice Center and took him to the robbery bureau for questioning. The petitioner recalled that he was taken into a room and handcuffed to a chair. After providing *Miranda* warnings, the detectives began their interrogation at approximately 10:30 a.m. and questioned him for nine hours without providing him any food, water, or restroom breaks. The petitioner testified that after approximately seven hours of questioning, he provided the statement that was later admitted at trial. He stated that he could not, however, remember the substance of that statement. The petitioner could not recall whether counsel had filed a motion to suppress the statement prior to trial. The petitioner admitted that he did not provide counsel with any potential alibi information and that counsel "pretty well developed" his theory of the case.

The petitioner testified that at one point during the trial, the State asked that he stand before the jury, and the trial judge ordered him to say, "I need a job." The petitioner stated that he complied with the requests.

The petitioner also complained about his sentence, stating, "I had been working for twenty-seven years. . . . and then all of sudden [sic] this comes up and then they go back twenty-seven years and give me the three strike law." The petitioner conceded that he did not contest his sentence on direct appeal or in his original or amended petitions for post-conviction relief, but he insisted that the sentence was unfair based upon the age of the predicate convictions.

During cross-examination, the petitioner conceded that the interrogation on September 3, 1998, was not confined to the robbery at issue in this case but also encompassed six other robberies that the petitioner was suspected of committing. The petitioner admitted providing confessions in each of the seven cases. The petitioner acknowledged that he was provided water during the interrogation and that he never asked to visit the restroom. He conceded that counsel had, in fact, filed a motion to suppress his statement on the basis that the statement was not voluntary due to the petitioner's impairment at the time of questioning. The petitioner acknowledged that the trial court denied the motion and allowed the statement to be admitted at trial. The petitioner stated that he wanted to enter a guilty plea for a sentence less than life without parole but that the "prosecutor wouldn't work no deals with me, she forced me to trial."

Upon examination by the court, the petitioner stated that counsel "did okay. I don't have no objections with [counsel] but there's just things that he could have objected to that wasn't objected to, you know."

Counsel testified that the petitioner's was "the first major case [he] worked on" and that the petitioner had been charged in seven different cases with aggravated robbery. Counsel stated that his first priority was to negotiate a plea agreement whereby the petitioner could avoid being sentenced as a repeat violent offender. He recalled that the prosecutor was unwilling to accept any agreement that included a sentence less than life without parole. Counsel stated that he filed one

motion to suppress "covering all the cases" because the petitioner actually only gave one statement wherein he confessed committing all of the robberies. Counsel testified that he did not seek to suppress the statement pursuant to *State v. Huddleston*, 924 S.W.2d 666 (Tenn. 1996), because the petitioner had been arrested on a valid arrest warrant before giving his statement and because the delay in bringing the petitioner for an arraignment did not exceed the constitutional threshold. Counsel stated that he did not object when the petitioner was asked to stand and say, "I need your job," because he "thought it was kind of settled law."[4] Counsel testified that he believed the petitioner's sentence was unduly harsh, and, as a result, "[he] was fighting [his] heart out for him." Counsel testified that he searched for "any legal basis [he] could find. Just didn't work out unfortunately."

At the conclusion of the hearing, the post-conviction court observed that his initial impression was that the petitioner was not entitled to relief but agreed to take the petition under advisement. By written order, the post-conviction court denied the petition for post-conviction relief, ruling that counsel's performance was not deficient.

In this appeal, the petitioner reiterates his claim that trial counsel was ineffective by failing to seek suppression of his inculpatory statement. In addition, he asserts that this court should remand the case to the trial court for a hearing based upon the holding in *State v. Copeland*, 226 S.W.3d 287 (Tenn. 2007).

## I. Ineffective Assistance of Counsel

The petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. *Id.* at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. *Id.* at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

---

[4]Although the petitioner recalled being asked to say, "I need a job," and counsel remembered the phrase as, "I need your job," the record is clear that the petitioner was only asked to utter a single phrase.

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

*Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001); *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In this case, the petitioner asserts that counsel was ineffective by failing to file a motion to suppress his statement on the basis of the delay between the petitioner's arrest and arraignment. Conceding the existence of probable cause to arrest, the petitioner nevertheless argues that "once probable cause has been established, any further detention for the specific purpose of gathering evidence is a violation of the arrested person's fourth amendment rights." We disagree.

In *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854 (1975), the Supreme Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest," *id.* at 114, 95 S. Ct. at 863, and that "this determination must be made by a judicial officer either before or promptly after arrest," *id.* at 125, 95 S. Ct. at 869. Sixteen years later, the Court concluded that "it is not enough to say that probable cause determinations must be 'prompt.' This vague standard simply has not provided sufficient guidance." *County of Riverside v. McLaughlin*, 500 U.S. 44, 55-56, 111 S. Ct. 1661, 1669 (1991). The Court ruled "that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.* at 56, 111 S. Ct. at 1670. The Court held that delays in excess of 48 hours will require more scrutiny:

Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes.

> In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. . . .

*Id.* at 57, 111 S. Ct. at 1670. In *Huddleston*, our own supreme court observed that "incarceration for any period of time is inherently coercive," *id.* at 670, and that "the intimidating environment [created by incarceration] is no doubt exacerbated" by unnecessary delay in taking the accused before a magistrate, *id*. As a result, where the delay exceeds 48 hours, the State must establish not only "that the statement meet[s] the Fifth Amendment standard of voluntariness but that it [is] sufficiently an act of free will to purge the primary taint" of the Fourth Amendment violation. *Huddleston*, 924 S.W.2d at 674; *see also Brown v. Illinois*, 422 U.S. 590, 598, 95 S. Ct. 2254, 2259 (quoting *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S. Ct. 407, 416 (1963)) (holding that when considering whether a statement obtained in violation of the Fourth Amendment must be suppressed, the question is "whether [the statement] 'was sufficiently an act of free will to purge the primary taint of the unlawful invasion.'").

In this case, the delay does not even come close to the 48-hour threshold established in *Gerstein*. Accordingly, the burden remains with the petitioner to establish a Fourth Amendment violation. More importantly, the record establishes, and the petitioner concedes, that he was arrested on the basis of a warrant. As a general rule, "the issuance of a valid arrest warrant satisfies the requirement that there must be a judicial determination of probable cause for extended detention." *State v. Carter*, 16 S.W.3d 762, 766 (Tenn. 2000) (citing *Baker v. McCollan*, 443 U.S. 137, 143, 99 S. Ct. 2689, 2694 (1979)). The petitioner suggests no reason why this general rule should not apply in his case, and we discern none from the record before us. Because the petitioner has failed to establish the merit of his *Huddleston* claim, he has likewise failed to establish that counsel performed deficiently by failing to raise the issue prior to trial.

### II. State v. Copeland

The petitioner asserts that this court should remand his case to the trial court for a hearing pursuant to the ruling in *State v. Copeland*, 226 S.W.3d 287 (Tenn. 2007), which he contends "formulated a new constitutional rule concerning the necessity of having an expert testify as to the fallibility of eye-witness testimony." The petitioner's argument misapprehends the holding in *Copeland* as well as the implications of the ruling to his case.

In *Copeland*, our supreme court overruled the holding in *State v. Coley*, 32 S.W.3d 831 (Tenn. 2000), that expert testimony about the reliability of eyewitness testimony was inadmissible in this state. The high court concluded that the test adopted in *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257 (Tenn. 1997), "is sufficient to allow the trial court to properly

evaluate the admissibility of expert testimony on the reliability of eyewitness identification." *Coley*, 226 S.W.3d at 300. The court observed that "[t]he essential role of the judge, as the neutral arbiter in the trial, is to govern the admission of the evidence within the rules, permitting only that expert testimony which substantially assists the jury in its consideration of the issue," and ruled that "[t]he *McDaniel* test provides the trial judge with the necessary guidelines to properly exercise his or her discretion." *Id.* Because the testimony Copeland sought to admit during his trial met the prerequisites of *McDaniel*, the supreme court concluded that the trial court had erroneously excluded the testimony. Further, because the testimony of a single eyewitness was the crux of the case against Copeland, the high court found that the exclusion of the testimony could not be classified as harmless error.

Contrary to the petitioner's assertions, *Copeland* does not require the admission of the testimony of an eyewitness identification expert but instead holds that such testimony is not per se inadmissible. Indeed, the *Copeland* court emphasized that expert testimony on eyewitness identification must satisfy the test established in *McDaniel*. In this case, the petitioner was not denied the opportunity to present such testimony at his trial because he did not seek to admit such testimony. Moreover, the petitioner was not barred from pursuing such testimony by the ruling in *Coley* because that case was decided after the petitioner's trial. The petitioner is not entitled to relief on this issue.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE