IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 9, 2015

**STATE OF TENNESSEE v. CHRISTOPHER WILSON**

**Interlocutory Appeal from the Criminal Court for Shelby County**
**No. 1400109     W. Mark Ward, Judge**

———————————————————

**No. W2015-00699-CCA-R9-CD  -  Filed April 21, 2016**

———————————————————

The Defendant, Christopher Wilson, filed a Rule 9 interlocutory appeal seeking our review of the trial court's denial of his motion to suppress evidence against him.  The Defendant filed a motion to suppress the results of his blood alcohol test based upon a violation of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013).  The trial court conducted an evidentiary hearing and found that a "good faith exception" to the Defendant's forced blood draw existed and denied the Defendant's motion.  The Defendant filed an application for an interlocutory appeal, which the trial court granted.  On appeal, the Defendant contends that the trial court erred when it denied the Defendant's motion to suppress based upon a "good faith exception" to the exclusionary rule.  After a thorough review of the record and applicable authorities, we conclude that the trial court erred when it denied the Defendant's motion to suppress.  As such, we reverse the trial court's judgment and remand this case for proceedings consistent with this opinion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN, J., joined.  THOMAS T. WOODALL, P.J., filed a concurring opinion.

Graham Cox, Collierville, Tennessee, for the appellant, Christopher Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Michael R. McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from a traffic stop in Collierville, Tennessee. After observing a traffic violation, Collierville Police Lieutenant John Banks conducted a traffic stop resulting in the Defendant's arrest for driving while under the influence. A search of the Defendant's vehicle incident to his arrest revealed marijuana and marijuana cigarettes. The Defendant refused to consent to a breath or blood test and the police officer ordered blood to be drawn despite the refusal. As a result of this stop, a Shelby County grand jury indicted the Defendant for possession of marijuana with the intent to sell, possession of marijuana with the intent to deliver, driving while under the influence of an intoxicant, driving while blood alcohol concentration was more than .08%, driving while under the influence of marijuana, driving while under the influence of an intoxicant and marijuana combined, and reckless driving. The indictments also reflected that the Defendant had two prior convictions for driving while under the influence on March 11, 2008, and January 24, 1995.

The Defendant filed a motion to suppress the results of the blood alcohol concentration (BAC) test. The Defendant, relying on *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), asserted that the forced blood draw taken absent a warrant, valid consent, or exigent circumstances violated his Fourth Amendment right against unreasonable search and seizure. The State responded that the warrantless blood draw was justified by exigent circumstances and by the implied consent statute. The State later amended its response contending that the "Good Faith Exception to the Exclusionary Rule" should apply in this case.

At the suppression hearing on the Defendant's motion, the parties presented the following evidence: John Banks, a Collierville Police Department lieutenant, testified that, on June 17, 2012, at around 6:39 p.m., he observed the Defendant driving a white Ford pickup traveling westbound on Maynard Way. Lieutenant Banks stated that he knew the Defendant from a prior DUI arrest and, also, the two men had previously worked together at an electrical company. Lieutenant Banks recalled that he was directly behind the Defendant's vehicle, which was stopped at a traffic signal. Lieutenant Banks testified that the Defendant made a wide right turn from the right hand traffic lane on Maynard Way into the left hand northbound traffic lane of Byhalia Road in violation of Tennessee Code Annotated section 55-8-140. Lieutenant Banks conducted a traffic stop of the Defendant based upon this alleged violation.

Lieutenant Banks testified that he approached the vehicle and noticed a "very strong" odor of intoxicant on the Defendant's breath and coming from inside the vehicle. Lieutenant Banks said that the Defendant's eyes were bloodshot and glassy. He noticed that the Defendant mumbled when he spoke, unlike his normal speech. Based upon his observations, Lieutenant Banks believed the Defendant was under the influence of an intoxicant and further investigation was necessary. Following the standardized field

2

sobriety testing, the Defendant was placed under arrest for DUI, and Lieutenant Banks searched the Defendant's vehicle incident to the arrest.

Lieutenant Banks testified that, during the search of the vehicle, he found a cooler on the front passenger floor board with five sixteen-ounce cans of Bud-Light beer and sixteen twelve-ounce bottles of Bud-Light beer. Behind the driver's seat, on the floorboard, was an unopened eighteen-pack of Bud-Light beer. Lieutenant Banks stated that he did not find any open containers of alcohol while searching the vehicle. While inside the vehicle, Lieutenant Banks detected an odor of marijuana, and he found in the center console a clear plastic bag containing "loose, green-leafy material." The material tested positive for THC. The weight of the marijuana was 28.7 grams. Along with the plastic bag of marijuana, Lieutenant Banks found a 1.1 gram unburned marijuana cigarette and a .2 gram partially burned marijuana cigarette, which both tested positive for THC.

Lieutenant Banks testified that, at the time of the arrest, he was concerned with the dissipation of alcohol and marijuana in the Defendant's system. Lieutenant Banks advised the Defendant of the implied consent law in relation to taking a blood or a breath test. The Defendant refused to consent to either a blood draw or breath test. The Defendant signed the implied consent form indicating his refusal at 7:39 p.m. Lieutenant Banks identified an alcohol toxicology request that he filled out during the Defendant's arrest on June 17, 2012. The form indicated that the Defendant's blood was drawn at 7:45 p.m., one hour and six minutes after the initial traffic stop. Lieutenant Banks explained that it was his "understanding" that the "policy" was to collect a mandatory blood draw because of the Defendant's March 11, 2008 DUI conviction. Lieutenant Banks said that it was not "common practice" for officers to obtain search warrants in the case of a mandatory blood draw and that he had never done so personally.

Lieutenant Banks testified that seeking a search warrant in this case would have caused an additional delay in obtaining the Defendant's blood and, therefore, a less accurate test result as to the Defendant's blood alcohol level. He estimated that the additional thirty to forty-five minutes would have caused him to "lose" evidence. Lieutenant Banks said that Collierville does not have a "twenty-four hour Magistrate." Officers must seek the "actual Judge" and, because the Defendant's traffic stop and arrest occurred on a Sunday afternoon, Lieutenant Banks would have had to first locate the judge.

On cross-examination Lieutenant Banks testified that he drew the Defendant's blood because of his reliance on statutes relating to second offense drivers. He added that he was also concerned with the dissipation of the alcohol in the blood. He agreed that his concern over the dissipation of alcohol was not included in any of his reports but stated

3

that "it is always a concern on any DUI arrest." He confirmed that he did not attempt to get a warrant.

Following the hearing, the trial court issued an order denying the Defendant's motion to suppress because "the officer was clearly acting under a good faith belief that he was abiding by the law and not violating any rights of the defendant." It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant asserts that the trial court erred in denying his motion to suppress because there was no search warrant, exigent circumstances, or consent to the blood draw. The Defendant further contends that the police officer's misunderstanding of the law did not justify the forced blood draw. The State concedes that the trial court improperly relied on a "good faith exception" but asks this Court to defer ruling pending the Tennessee Supreme Court's ruling in *State v. Corrin Kathleen Reynolds*, No. E2013-02309-CCA-R9-CD, 2014 WL 5840567 (Tenn. Crim. App., at Knoxville, Nov. 14, 2014), *perm. app. granted* (Tenn. March 16, 2015).[1]

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001);

---

[1] In *Reynolds*, the trial court suppressed the results of a blood draw because the State failed to prove the Defendant "intelligently" gave consent for a blood draw. After reviewing the evidence, this Court held that "the officer had probable cause 'to believe that [Defendant,] the driver of a motor vehicle involved in an accident resulting in the injury or death of another . . . committed [DUI]' and because Defendant never refused to submit to the blood draw, the results of the blood test are admissible." Our Court also noted that, "While this Court is without authority to adopt the good-faith exception, we would be remiss if we did not take this opportunity to note that, aside from authority of the implied consent statute justifying the outcome of this case, we believe that the facts and posture of this case, in particular, seem to fit squarely within the limited exceptions to the application of the exclusionary rule set forth in both *Davis* and *Krull*." *Id* at *16. The Tennessee Supreme Court accepted the application to appeal and oral argument was heard on September 30, 2015.

*State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

Both the United States and Tennessee Constitution protect against unreasonable searches and seizures. The Fourth Amendment of the U.S. Constitution proclaims that "the right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." The Tennessee Constitution provides "people shall be secure in their persons, houses, and papers and possessions, from unreasonable searches and seizures." Tenn. Const. art. I, § 7. Generally, to search a person's property, a warrant is needed, and "evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). A trial court accordingly presumes that a warrantless search or seizure is unreasonable unless the State demonstrates that one of the exceptions to the warrant requirement applies to the search. *Id.*

The Defendant's blood was taken pursuant to Tennessee Code Annotated section 55-10-406 (5)(B) (2014), it provides in pertinent part that:

> If a law enforcement officer has probable cause to believe that the driver of a motor vehicle has committed [vehicular homicide], [aggravated vehicular homicide] or [the offense of driving under the influence], and has a prior conviction of [vehicular homicide], [aggravated vehicular homicide] or [driving under the influence], the officer shall cause the driver to be tested for the purpose of determining the alcohol or drug content of the driver's blood. The test shall be performed in accordance with the procedure set forth in this section and shall be performed regardless of whether the driver does or does not consent to the test.

"[T]he physical intrusion occasioned by a blood draw 'infringes an expectation of privacy,'" and the chemical analysis of blood is also an invasion of an individual's privacy interests. *State v.* Scarborough, 201 S.W.3d 607, 616 (Tenn. 2006) (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989)). "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013) (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)). Accordingly, the blood of the accused cannot be drawn or

5

analyzed unless the search is a reasonable one under the Fourth Amendment. *Scarborough*, 201 S.W.3d at 616; *see Schmerber v. California*, 384 U.S. 757, 767 (1966). A warrantless search is presumptively unreasonable, and "evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S .W.2d at 629. One such exception is a search conducted under exigent circumstances to prevent the imminent destruction of evidence. *Talley*, 307 S.W.3d at 729. Another is consent. *Id*.

It is uncontested that the Defendant did not give consent for the blood draw and both parties agree that exigent circumstances did not exist to justify the blood draw. The trial court also explicitly found that exigent circumstances did not exist. The trial court then went on to consider federal law regarding a good faith exception to the warrant requirement.

> In the landmark case of United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court created what is known as the "good faith" exception to the exclusionary rule and permitted evidence to be introduced if it was seized in reasonable, good faith reliance upon a search warrant subsequently found to be defective. In Illinois v. Krull,480 U.S. 340, 107 S. Ct. 1160, 94 L.Ed.2d 364 (1987), the United States Supreme Court applied the "good faith" exception to actions of the police conducted pursuant to a presumptively valid statute that is later declared unconstitutional. Likewise, in Davis v. United States, 131 S. Ct. 2419, 180 L.Ed.2d 285 (2011), the United States Supreme Court extended the good faith exception to searches conducted in objectively reasonable reliance on binding appellate precedent. Although the Tennessee Supreme Court has not yet addressed whether a "good faith" exception is applicable in Tennessee and the Tennessee Court of Criminal Appeals has in several opinions [but in other contexts] refused to recognize such an exception, See W. Mark Ward, TENNESSEE CRIMINAL TRIAL PRACTICE § 7:10 (West 2013-2014) (collecting cases), none of the cases that have addressed this situation have considered it in light of an officer's reliance upon a state statute and appellate precedent that appeared to dispense with the warrant requirement. Consider State v. Thomas,2013 WL 4715660 (Tenn. Crim. App. Aug. 30, 2013).

> Furthermore, in a closely related issue, the legislature in 2011 enacted the "Exclusionary Rule Reform Act" [Tenn. Code Ann. § 40-6-108(c)(3)] which allows a good faith exception to searches conducted pursuant to search warrants when an officer acts in "reasonable reliance on

a statute that is subsequently ruled unconstitutional; or controlling precedent that is overruled after the issuance of the search warrant. . ." Thus, the legislature has recently indicated a willingness to soften the exclusionary rule in some circumstances and expressed public opinion in support of a relaxation of such a rule.

Accordingly, in this matter of first impression, this Court concludes that even if the blood draw violated the Fourth Amendment and Tennessee Constitution, Article I, § 7, that the results of the test should not be excluded under the good faith exception to the exclusionary rule. Excluding the evidence under the present circumstances would have no deterrent value to law enforcement officers, whatsoever. Here the officer was clearly acting under a good faith belief that he was abiding by the law and not violating any rights of the defendant. To suppress the evidence in the context of this case serves no significant purpose.

In State v. Carter, 16 S.W.3d 762, 768 n.8 (Tenn. 2000), the Tennessee Supreme Court said "we decline to address [the good faith exception's] validity under the Tennessee Constitution until the issue is squarely presented." Meanwhile, the Tennessee Court of Criminal Appeals has indicated a reluctance to adopt the good faith exception until the matter is addressed by the Tennessee Supreme Court. *State v. Lonnie Taylor*, 1987 WL 25417 (Tenn. Crim. App. 1987). This Court respectfully submits the present ruling hoping that the issue will be "squarely presented" and finally decided by our appellate courts.

We decline to uphold the trial court's finding of a good faith exception. The State notes that our Supreme Court has accepted a case that involves a similar issue; however, it is not the role of this Court to speculate or guess at what might become the law. Currently, there is not a recognized "good faith" exception to the warrant requirement in the state of Tennessee. Accordingly, we reverse the trial court's denial of the Defendant's motion to suppress.

Even should the Supreme Court ultimately adopt a "good faith" exception, our review of the record did not reveal any evidence that the officer relied on case law for the proposition that dissipation in the blood is an exigent circumstance. The officer testified that it was his "understanding" that he was following "policy." There was no evidence presented as to whether the policy was based on convenience, financial resources, or the statute itself. As to an exception based on a statute later found unconstitutional, this Court has concluded that Tennessee Code Annotated section 55-10-406 does not dispense with the warrant requirement and is constitutional. *See State v. Charles A. Kennedy*,

7

M2013-02207-CCA-R9-CD, 2014 WL 4953586, (Tenn. Crim. App., at Nashville, Oct. 13, 2014), *no Tenn. R. App. P. 11 application filed*.

## III. Conclusion

In accordance with the aforementioned reasoning and authorities, we reverse the trial court's judgment denying the Defendant's motion to suppress. We remand this case for further proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE